# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEXTEC APPLICATIONS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BROOKWOOD COMPANIES, INC., | ) |
| and THE HALLWOOD GROUP, INC., | ) |
| | ) |
| Defendants. | ) |

Case No. 07 CV 6901 (RJH)

**MEMORANDUM OF BROOKWOOD COMPANIES, INC. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT AND PATENT INVALIDITY**

Thomas J. Parker
ALSTON & BIRD, LLP
90 Park Avenue
New York, NY 10016-1387
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

Blas P. Arroyo
Jitendra Malik
Bank of America Plaza
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Telephone: (704) 444-1000
Facsimile: (704) 444-1111

Attorneys for Defendant

BROOKWOOD COMPANIES, INC.

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS .................................................................................... i

TABLE OF AUTHORITIES ............................................................................. ii

I.    FACTUAL BACKGROUND ..................................................................... 1

      A.   Introduction ..................................................................................... 1

      B.   Background Relevant To The Asserted Patents-In-Suit ............................ 2

      C.   Brookwood's Accused Process And Equipment ....................................... 6

II.   THE REMAINING CLAIMS ASSERTED BY NEXTEC ARE NOT
      INFRINGED OR ARE INVALID AS A MATTER OF LAW ...................................... 7

      A.   Relevant Principles Governing The Interpretation Of Patent Claims ......... 7

      B.   Brookwood Does Not Infringe The Asserted Claims Of The
           Patents-In-Suit ............................................................................... 10

           1.  The Claim Phrase "Shear Thinning" or "Shear Thinnable"
               Excludes the Use of Material Concentrations of Solvent in
               the Coating Composition ............................................................. 10

           2.  Brookwood Does Not Infringe the Asserted Claims of the
               '051 and '172 Patents-in-Suit ....................................................... 13

      C.   The Asserted Claims Of The '841 System Patent Are Invalid
           As A Matter Of Law ....................................................................... 17

      D.   The Asserted Claim Of The '902 Patent Is Invalid As A Matter Of Law ... 20

           1.  The Claim of the '902 Patent is Invalid on the Basis of Double Patenting ... 21

           2.  The '902 Patent is Invalid in Light of the Prior Art .......................... 23

III.  CONCLUSION .................................................................................. 26

# TABLE OF AUTHORITIES

Page

Cases:

*Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361 (Fed. Cir. 2007) ......................... 9

*Augustine Medical v. Gaymar Indus., Inc.*, 181 F.3d 1291 (Fed. Cir. 1999). ........................ 23

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945 (Fed. Cir. 2006)............................................. 8, 16

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374
        (Fed. Cir. 2006). ................................................................................................... 9, 16

*Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302
        (Fed. Cir. 2000). ............................................................................................... 8, 16, 17

*Evans Cooling System, Inc. v. General Motors Corp.*, 125 F.3d 1448
        (Fed. Cir. 1997) ................................................................................................... 18, 20

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*,
        389 F.3d 1370 (Fed. Cir. 2004); ................................................................................ 17

*Hewlett-Packard Company v. Mustek Systems, Inc.*, 340 F.3d 1314
        (Fed. Cir. 2003) . ........................................................................................................ 20

*In re Curtis*, 354 F.3d 1347 (Fed. Cir. 2004) .................................................................. 25, 26

*In re Vogel*, 422 F.2d at 441 (C.C.P.A. 1970)................................................................. 21, 22

*Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352 (Fed. Cir. 2000) ........................... 17

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995)
        (*en banc*) *aff'd* 517 U.S. 370, 116 S.Ct. 1384 (1996)............................................... 7

*Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340 (Fed. Cir. 2004) .............................. 9

*Moore U.S.A. v. Standard Register Co.*, 229 F.3d 1091 (Fed. Cir. 2000) ) ............................ 16

*NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) )................................. 9

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*)....................... 7, 8, 9, 10, 12

*Springs Window Fashions LP v. Novo Industries LP*, 323 F.3d 989
        (Fed. Cir. 2003) ....................................................................................................... 12

Page

*Technology. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316
(Fed. Cir. 2008) .................................................................................. 25

*Tronzo v. Biomet, Inc.*, 156 F.3d 1154 (Fed. Cir. 1998) .................................... 23, 26

*Turbocare Div. of Demag Delaval v. General Electric*, 264 F.3d 1111
(Fed. Cir. 2001) .................................................................................. 24

*Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363 (Fed. Cir. 2000) ................................ 18, 20

*Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295
(Fed. Cir. 2007) .................................................................................. 9

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ....................... 7. 8, 9, 10

<u>Statutes</u>

35 U.S.C. §101 ............................................................................................ 21

35 U.S.C. §112 ............................................................................................ 23

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEXTEC APPLICATIONS, INC., ) | Case No. 07 CV 6901 (RJH) |
| ) | |
| Plaintiff, ) | **MEMORANDUM OF BROOKWOOD** |
| ) | **COMPANIES, INC. IN SUPPORT OF** |
| v. ) | **MOTION FOR SUMMARY** |
| ) | **JUDGMENT OF** |
| BROOKWOOD COMPANIES, INC., ) | **NONINFRINGEMENT AND PATENT** |
| and THE HALLWOOD GROUP, INC., ) | **INVALIDITY** |
| ) | |
| Defendants. ) | |

Defendant Brookwood Companies, Inc. ("Brookwood") has moved the Court for the

entry of summary judgment with respect to the remaining claims asserted in this action by

plaintiff Nextec Applications, Inc. ("Nextec") for alleged patent infringement.  As

demonstrated below, there is no disputed issue of material fact with respect to material defenses

asserted by Brookwood in the present action.  As a result, summary judgment should be entered

in Brookwood's favor with respect to these claims.

## I.

## FACTUAL BACKGROUND

**A.    Introduction**

This action involves the manufacture and sale of coated textile fabrics by Brookwood

for use in the fabrication of garments on behalf of the United States military pursuant to a

government contract.  The garments form part of what is referred to as the "Generation III" or

"Gen III" garment layering system.  The particular fabrics at issue in this case are used to

manufacture garments that comprise the so-called "Level V" and "Level VII" layers of the

multilayer system.  D.E. 47, Montie Decl. ¶¶6 and 8 (6/30/08).  The Level V garments are a

soft shell jacket and trouser, while the Level VII garments consist of a cold weather parka and trouser in which the accused fabrics were used as the face fabric and in the lining of the garment. *Id*.

Nextec is the owner of a collection of patents related to processes for treating fabrics by a technique that it refers to as "encapsulation" in commercial literature. According to Nextec's commercial marketing materials, "encapsulation" of the individual fibers in the yarns that are woven to make the fabric results in alleged performance benefits. Arroyo Decl., Exh. 5, Excerpt from Nextec website.

Both Nextec and Brookwood were approved to supply fabrics in support of the Government's Gen III program. After Nextec encountered difficulties in making timely deliveries of fabrics conforming to the government's specifications, Brookwood met the needs of the government subcontractors and supplied substantial requirements under the relevant contract. This suit ensued not long after Brookwood began supplying the requirements of the government sub-contractors for coated fabrics as part of the Gen III program.

**B.**     **Background Relevant To The Asserted Patents-In-Suit**

Pursuant to a procedure established by the Court with the input of the parties, Nextec narrowed the number of claims asserted in this action for purposes of expert discovery, and then for further proceedings in this action, including summary judgment. *See* D.E. 82, Scheduling Order (1/7/09); *see also* D.E. 88, Claim Designation Order (5/19/09). As a result of this process, the claims in this action have been narrowed to ten individual patent claims from four patents assigned to Nextec, U.S. Patent Nos. 5,418,051 ("the '051 patent"); 5,869,172 ("the '172 patent"); 5,954,902 ("the '902 patent); and 6,289,841 ("the '841 patent").

Three of the four remaining patents-in-suit (the '051, '172 and '902 patents) claim their earliest priority filing date in the United States Patent Office from applications, having similar content, that were filed with the Patent Office on March 14, 1988, including application serial no. 167,630.  Statement of Undisputed Fact ("SUF") 31, *see* Arroyo Decl., Exh. 1, '051 patent cover page (under Related U.S. Application Data).  The '841 patent, which is directed to a "system" (i.e. a machine or apparatus) claims priority to approximately one year later on March  10, 1989.  SUF 46; *see* Arroyo Decl., Exh. 4 '841 patent cover page.

In addition, three of the four asserted patents (the '172, '841 and '902 patents) claim priority through a chain of applications that includes Application Serial No. 407,191, which was filed on March 17, 1995 and which issued as United States Patent No. 5,876,792 ("the '792 patent") on March 2, 1999.  SUF 10; *see e.g.* Arroyo Decl., Exh. 4, Excerpt from '841 patent; *see also* Exh. 10, S. Becker Depo. Tr. 46 (16) – 49 (11).  The '792 patent is not specifically asserted in this action by Nextec, but is material to at least part of the issues involved in this case as discussed further below.

Each of the '172, '841 and '902 patents asserted in this action contains a similar discussion in the Background section, acknowledging previously known techniques for treating fabrics in order to impart weather-resistant properties, while maintaining "breathability" in the finished fabric article.  One of the patents identified in this section of the patents-in-suit is United States Patent No. 3,594,213 ("the '213 patent") which was granted on July 20, 1971 and which names Joseph T. Rudman ("Rudman") as the inventor.  SUF 9, *see e.g.* Arroyo Decl., Exh. 4, '841 patent excerpt, Col. 3 (lns. 11-14); *see also* Exh. 2, '172 patent excerpt, Col. 3 (lns. 26-29); Exh. 8, Cole Depo. Tr. 219 (9-23) and 221 (10-21).

The Rudman '213 patent discloses a known prior art technique for coating fabrics using the so-called "knife over air" process, which is also used by Brookwood in its accused system. Nextec's technical expert witness in this action, Dr. Cole, acknowledged that the viscosity ranges of the coating formulations described in the Rudman patent also encompass the viscosity ranges of the coating compositions used by Brookwood in its accused process.  SUF 19; *see also* Arroyo Decl., Exh. 8, Cole Depo. Tr. 234 (16) – 235 (17); 242 (21) – 243 (2).

With respect to previously known coating processes, including the process described in the Rudman patent, the Background section of the relevant patents characterizes these processes (and purports to distinguish them) on the basis that the coating compositions used in the prior art contained solvents in order to "aid in the flow of the composition," as distinguished from the claimed technique of "shear thinning" the polymer composition:

> *Prior art treatment of webs that force a composition into the spaces of the web while maintaining some breathability have relied on using low viscosity compositions or solvents to aid in the flow of the composition.* U.S. Pat. No. 3,594,213 [Rudman] describes a process for impregnating or coating fabrics with liquefied compositions to create a breathable fabric. This patent imparts no energy into the composition to liquefy it while forcing it into the spaces of the web. *The composition is substantially liquefied before placement onto and into the web.* U.S. Pat. No. 4,588,614 teaches a method for incorporating an active agent into a porous substrate. *This patent utilizes a solvent to aid in the incorporation of the active agent into the web…*

SUF 9; *see, e.g.* Arroyo Decl., Exh. 2, '172 patent excerpt, Col. 3 (lns. 25-38); Exh. 4, '841 patent excerpt, Col. 3 (lns. 11-22) (emphasis supplied).

As previously indicated, three of the four remaining patents asserted in this action claim priority from and through Nextec's '792 patent (patent application serial number 407,191). During the prosecution of the application for the '792 patent, Nextec's counsel stressed the significance of its use of so-called "shear thinning" as an alleged, material distinction from

prior art processes utilizing solvents as described in the above passage from the patent

specification.  In distinguishing the prior art, Nextec specifically argued that the prior art

utilized solvents to aid in the penetration of the coating composition while the Nextec process

"does not utilize solvents":

> In addition to the above, Lauchenauer (4,588,614) utilizes solvents to aid in the penetration of the gel into the porous substrate ... The solvent plays a critical role in the amount of penetration of the gel (see abstract).   Once the solvent is evaporated, the degree of penetration is halted.  *Applicant does not utilize solvents and shear thins viscous materials in the order of hundreds of thousands ($10^5$) to millions ($10^6$) of centipoise.*

SUF 11; Arroyo Decl., Exh. 12, Response To Office Action Dated December 23, 1996 (DDX.

19) at p. 14 (emphasis supplied); *see also* Exh. 10, Becker Depo. Tr. 51 (5) – 52 (6) ("Unless

something was very simple and you needed no technical explanation, which this subject matter

is not, I would always refer to the client for his technical expertise."); *see also* Tr. 55 (2-16).

Similar arguments were also located in the file pertaining to the '902 patent asserted in

this action, distinguishing the Rudman process on the basis of the use of solvents in contrast to

the use of a "shear thinned material."  *See* SUF 12; Arroyo Decl., Exh. 13, Response to Office

Action dated October 7, 1996 (DDX-111) at p. 26-27.  ("The liquid material utilizes solvents

and would be expected to saturate the fabric resulting in a different product than described in

the present patent application.").

In addition, Nextec reiterated substantially the same arguments as reproduced above in

prosecuting an application containing claims similar to, and which claims direct priority from

the same application (Serial No. 08/472,568) as the asserted '902 patent (i.e. method for

"controlling porosity"), U.S. Patent No. 5,846,604:

> Lauchenauer (4,588,614) teaches the control over the degree of penetration of a thixotropic gel having an active agent,

- 5 -

> not over controlling the effective pore size of a web by controlling the amount of encapsulation combined with the placement of a polymer composition. *The solvent plays a critical role in the amount of penetration of the gel (see abstract). Once the solvent is evaporated, the degree of penetration is halted. Applicant does not utilize solvents and shear thins viscous materials in the order of hundreds of thousands $(10^5)$ to millions $(10^6)$ of centipoise. This difference has many environmental and quality control implications.*

SUF 13, Arroyo Decl., Exh. 14, First Submission Under 37 CFR § 1.129(a): Response to Final Office Action at p. 12 (DDX-112) (emphasis supplied); *see also* Exh. 15, Excerpt from the '604 patent at Col. 1, lns. 7-23 (disclosing family history of the '604 patent.).

## C.   Brookwood's Accused Process And Equipment

As discussed in the preceding section, the specifications of relevant patents-in-suit, and related arguments presented to the Patent Office on Nextec's behalf, stressed an alleged distinction between conventional coating processes of the type disclosed in the prior art, and the alleged inventions of the patents-in-suit, on the basis of the use in the prior art processes of "liquefied compositions" incorporating material concentrations of solvents, versus Nextec's reliance on the use of so-called "shear thinning."  Despite these material representations, and the related disclosures of the patent specifications themselves, Brookwood's accused process in this action is also a conventional coating process of the same type as disclosed and described in the Rudman patent, for example, in which solvents are used in material concentrations in the coating composition.  SUF 16; Colasanto Decl. ¶¶19 and 22; *see also* Arroyo Decl., Exh. 8, Cole Depo. Tr. 157 (5) – 158 (2).

In a similar fashion, Nextec is asserting its '841 machine patent against a commercial coating apparatus that was actually installed and in use by Brookwood's affiliate and relevant predecessor, Kenyon Industries, Inc. for the coating of fabrics by 1964.  SUF 56; Nelson Decl.

¶¶8-10; Boiardi Decl. ¶3.  The testimony of knowledgeable witnesses, as corroborated by relevant documents, establish the prior existence of Brookwood's accused coating apparatus (KK-1) as well as its use to coat fabrics with coating formulations to produce weather resistant fabrics using the same equipment as used in coating the accused fabrics, including the same blade design and related control mechanisms, for example.  SUF's 57-59; Nelson Decl. ¶¶11-18; Boiardi Decl. ¶3.

In the interest of brevity, additional facts relevant to specific defenses asserted by Brookwood with respect to the remaining claims asserted by Nextec will be presented below in the context of the discussion directed to those claims.

## II.

## THE REMAINING CLAIMS ASSERTED BY NEXTEC ARE NOT INFRINGED OR ARE INVALID AS A MATTER OF LAW

### A.    Relevant Principles Governing The Interpretation Of Patent Claims

In order to resolve potentially disputed issues that may arise in connection with the present Motion, the Court will likely be called upon to determine the meaning of selected terms that appear in the asserted claims of the remaining patents-in-suit.  In this connection, the construction of patent claims is an issue of law for resolution by the court.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*) *aff'd* 517 U.S. 370, 116 S.Ct. 1384 (1996).  As part of its relatively recent decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*), the Federal Circuit reaffirmed the fundamental notion that it is a "bedrock principle of patent law" that the claims of a patent define the scope of the invention to which the patent owner is entitled to the right to exclude.  *Id.* at 1312; *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

As a result of relevant decisions issued over the years, various principles related to the construction of terms used in patent claims have evolved, some having greater or lesser applicability in a given case depending on the specific circumstances related to the patents at issue.  As a basic principle, it is often stated that the words used in a claim are generally given "their ordinary and customary meaning," as they would be understood by a person of ordinary skill in the particular field of endeavor at the time of the alleged invention (i.e. as of the effective filing date of the patent application).  *Phillips v. AWH*, 415 F.3d at 1312-13; *see also Vitronics Corp.*, 90 F.3d at 1582.

It is also generally stated that terms used in a patent claim are construed in light of the specification of the patent of which they are a part.  *Phillips v. AWH*, 415 F.3d at 1315-16 ("It is fundamental that claims are to be construed in the light of the specification and both are to be read with a view to ascertaining the invention.").  In addition, in instances where the patentee intends for a special meaning to apply to a term used in a claim (i.e. that departs from the ordinary and customary meaning of a term as understood in the relevant field), the special meaning must be clear and apparent from a review of the specification of the patent.  *Phillips v. AWH*, 415 F.3d at 1316; *Elekta Instrument v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000).

In construing a patent claim it is also fundamental that each of the terms used in the claim must be given meaning and effect.  *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("Allowing the patentee to argue that physical structures and characteristics specifically described in the claim are merely superfluous would render the scope of the patent ambiguous … For that reason, claims are interpreted with an eye toward giving effect to all terms in the claim."); *Elekta Instrument S.A.*, 214 F.3d at 1307 (Fed. Cir. 2000) ("Any other

conclusion renders the reference to 30 degrees superfluous."); *see also Curtiss-Wright Flow Control Corp. v. Velan, Inc*., 438 F.3d 1374, 1379 (Fed. Cir. 2006) ("Moreover, the district court's construction of 'adjustable' renders that limitation nearly meaningless.").

In addition to considering the language used in the claims themselves, as understood in the context of the specification, a court should also consider the prosecution history related to the prosecution of the claims in the Patent Office.  In particular, arguments made in the course of prosecuting the patent can "inform the meaning of the claim language by demonstrating how the inventor understood the invention, and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips v. AWH*, 415 F.3d at 1317; *see also Vitronics Corp*., 90 F.3d at 1582-83.

Where a series of patents are derived from the same parent application(s), and share common terms, the claims should be interpreted consistently across all of the asserted patents. *NTP, Inc. v. Research in Motion, Ltd*., 418 F.3d 1282, 1293 (Fed. Cir. 2005).  Similarly, statements made in the prosecution of related applications should also be considered in construing the claims of the related patent.  *Microsoft Corp. v. Multi-Tech Sys., Inc*., 357 F.3d 1340, 1349-50 (Fed. Cir. 2004) (construing claims in light of representations made during prosecution of a subsequent application:  "We likewise believe that Multi-Tech's statement made during prosecution of the '627 patent is relevant to an understanding of the common disclosure in the sibling '649 and '532 patents."); *Verizon Services Corp. v. Vonage Holdings Corp*., 503 F.3d 1295, 1307 (Fed. Cir. 2007) ("Verizon argues that the disclaimer in the '291 application process (leading to the '497 patent) should not apply to the '880 patent because it occurred after the '880 patent issued.  We reject this argument."); *see also Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1368 (Fed. Cir. 2007).

The above primary claim construction tools, namely the claims themselves, the specification, and the prosecution history, are referred to as the "intrinsic record" related to the patent.  The Federal Circuit has also authorized resort to selected extrinsic evidence which may aid a court in interpreting the claims, although the Court has also made it clear that extrinsic evidence should not be used in a manner that contradicts a construction that is clear from the intrinsic record itself.  *Phillips v. AWH*, 415 F.3d at 1317-18; *see also Vitronics Corp.*, 90 F.3d at 1585.  Within the class of extrinsic evidence, the Federal Circuit has indicated that technical dictionaries and treatises can be particularly useful as a tool in ascertaining the meaning of claim terms as they would be understood in the relevant field of technology.  *Id.* at 1318 and 1322-23; *Vitronics*, 90 F.3d at 1585, n. 6.

**B.    Brookwood Does Not Infringe The Asserted Claims Of The Patents-In-Suit**

   1.    The Claim Phrase "Shear Thinning" or "Shear Thinnable" Excludes the Use of Material Concentrations of Solvent in the Coating Composition

As discussed previously in the factual background, the Background sections of the specifications of the patents-in-suit distinguish conventional coating processes, such as described in the prior art Rudman patent, on the basis that the Rudman process, for example, relies on the use of "low viscosity compositions or solvents to aid in the flow of the composition."  SUF 9; *see, e.g.* Arroyo Decl., Exh. 4, '841 patent excerpt, Col. 3 (lns. 11-22).  The same section of the patent purports to distinguish the prior art process disclosed in U.S. Patent No. 4,588, 614 (Lauchenauer) on the basis that:  "This patent utilizes a solvent to aid in the incorporation of the active agent into the web." *Id.* at lines 20-22.

These passages from the specification of the relevant patents were then expanded upon in material arguments made during the prosecution of the application for the '792 patent, on which three of the remaining asserted patents in this case directly rely for priority (the '172,

'841 and '902 patents).  SUF 10.  As part of its argument to secure the '792 patent, Nextec

specifically represented that:  "Applicant does not utilize solvents and shear thins viscous

materials in the order hundred of thousands ($10^5$) to millions ($10^6$) of centipoise."  Similar

arguments were also presented in the file of the application related to the asserted '902 patent.

*See* SUF's 11 and 12.

In addition, in the file pertaining to Application Serial No. 08/487,004, U.S. Patent No.

5,846,604, which claims priority from the same application as the asserted '902 patent (Serial

No. 08/472,568), and claims similar subject matter (a method of controlling the pore size of a

web), Nextec again emphasized that its process did *not* use solvents and "shear-thinned" very

high viscosity compositions in contrast to the prior art:

> Lauchenauer (4,588,614) teaches the control over the degree of penetration of a thixotropic gel having an active agent, not over controlling the effective pore size of a web by controlling the amount of encapsulation combined with the placement of a polymer composition. The solvent plays a critical role in the amount of penetration of the gel (see abstract). Once the solvent is evaporated, the degree of penetration is halted. *Applicant does not utilize solvents and shear thins viscous materials in the order of hundreds of thousands ($10^5$) to millions ($10^6$) of centipoise. This difference has many environmental and quality control implications.*

Arroyo Decl., Exh. 14, First Submission Under 37 CFR § 1.129(a): Response to Final Office

Action at p. 12 (DDX-112) (emphasis supplied); Exh. 15, '604 patent excerpt at Col. 1, lns. 7-

23 (disclosing family history of the '604 patent); *see also* Exh. 5, Excerpt from Nextec Website

("We use only 100% solid materials, which create no hazardous wastes."); *see also* Colasanto

Decl.  ¶¶20-21.

As noted in the preceding discussion of legal principles related to patent claim

interpretation, claims should be interpreted in light of the specification and statements made

during the prosecution of the same or related patent applications.  Statements made during

prosecution are particularly material in determining whether the inventor limited the claimed

invention during the course of prosecution in the Patent Office.  *Phillips v. AWH Corp.*, 415

F.3d at 1317; *Springs Window Fashions LP v. Novo Industries LP*, 323 F.3d 989, 995 (Fed. Cir.

2003) ("The public notice function of a patent and its prosecution history requires that a

patentee be held to what he declares during the prosecution of the patent.").

> In this case, the specifications of the asserted patents clearly purport to distinguish

relevant prior art coating techniques involving knife over air coating (as used by Brookwood)

based on the use of material concentrations of solvents in the prior art coating compositions

(and at viscosities in the same range as used by Brookwood).  These statements from the

specification were then referenced and incorporated into material arguments that were made

during the prosecution of a directly related patent on which Nextec relied for priority (the

application for the '792 patent), as well as in the file of one of the patents specifically asserted

by Nextec in the present case (the '902 patent) and in a case directly related to that patent.

SUF's 11-13 and evidence cited therein.

> Consistent with the above authorities, Nextec should not be permitted to elude the clear

import of material arguments made in the course of obtaining patents directly related to the

patents-in-suit.  Accordingly, these claims must be construed as encompassing processes in

which the polymer composition is "shear thinned," meaning that the coating material does not

contain material concentrations of solvents which aid in the application of the coating to the

fabric.  Since the compositions used by Brookwood in the accused coating processes

incorporate at least sixty percent (60%) solvent concentration (SUF 16), these processes must

also be outside the permissible scope of the remaining claims asserted in the present action by Nextec as a matter of law.

    2.    Brookwood Does Not Infringe the Asserted Claims of the '051 and '172
          Patents-in-Suit

As noted in the immediately preceding section, each of the remaining claims of the asserted patents contain the requirement that the polymer composition is "shear thinning" or the equivalent, "shear thinnable."  As also noted in the preceding section, these limitations should be construed, consistent with representations made by Nextec to the Patent Office, to exclude coating formulations and processes of the type used by Brookwood that utilize significant concentrations of solvent in the coating composition (in Brookwood's case, at least 60%).  SUF 16; Colsanto Decl. ¶22.

In addition to the above issue, Brookwood also does not infringe the asserted claims of the '051 and '172 patents (representing seven of the ten remaining claims) on the further basis that Nextec has not presented any evidence of infringement with respect to an additional material limitation of the asserted claims from these specific patents.

The asserted claims of the '051 and '172 patents expressly require the use of a "shear thinning thixotropic polymer composition," in the case of the '051 patent, or a "shear thinnable thixotropic polymeric material" in the case of the '172 patent.  SUF 24; *see also* Arroyo Decl., Exh. 8, Cole Depo. Tr. 78 (18) – 79 (22).  Thus, these claims not only contain the requirement for a "shear thinnable" or shear thinning" polymer, but additionally specify that the polymer is "thixotropic."  Claims from additional patents assigned to Nextec only specify that the polymer composition is "shear thinnable" and do not contain the further limitation that the polymer is also "thixotropic."  SUF 25; *see, e.g.* Arroyo Decl., Exh. 3, '902 patent excerpt at Col. 30, lns. 48 and 50 (Claim 1); *see also* Exh. 9, Meirowitz Depo. Tr. 155 (3-17) (6/6/08).

Both Nextec's technical expert witness in this action, Dr. Cole, as well as its designated witness under Rule 30(b)(6) on various issues including the issue of infringement, Dr. Meirowitz, have acknowledged that the terms "thixotropic" and "shear thinnable" (or the equivalent "shear thinning") pre-date the patents-in-suit and have accepted technical meanings in the field of chemistry.  SUF 26; *see, e.g.* Arroyo Decl., Exh. 8, Cole Depo. Tr. 80 (13) – 81 (7) (properties recognized for more than 40 to 50 years).

A polymer composition is "thixotropic" if the viscosity of that material decreases over time in response to a *constant* shear force.  SUF 27; Arroyo Decl., Exh. 9, Meirowitz Depo. Tr. 326 (19) – 327 (2) (7/30/08); *see also* Exh. 8, Cole Depo. Tr. 82 (10) – 83 (8).  A composition is considered "shear thinnable," where the viscosity of that composition decreases in response to an *increasing* rate of shear.  SUF 28; *see* Arroyo Decl., Exh. 8, Cole Depo. Tr. 67 (7-17).  Treatises cited by Dr. Cole (Nextec's technical expert) in support of her rebuttal report also incorporate these recognized definitions for the relevant polymer properties.  SUF 30; *Id.*, Cole Depo. Tr. 84 (7) – 85 (11) and Arroyo Decl., Exhs. 22 and 23.

Notably, the earliest applications from which Nextec claims priority in this action include a discussion of the properties of materials that are "shear thinning," as well as the additional properties of polymers that are considered "thixotropic."  The descriptions of the relevant properties coincide with the polymer characteristics described in the literature.  SUF 33, and *see* Arroyo Decl., Exh. 18, Excerpt from the '630 application at p. 87 (22) – 88 (15) ("It is always somewhat disconcerting to take a viscosity reading under a *constant* shear rate and find that the viscosity drifts downward under the steady shear rate condition … this type of flow is typical of a thixotropic system.") (emphasis supplied).

Nextec's designated witness under Rule 30(b)(6)  on the issue of infringement acknowledged that the term "thixotropic," as used in the claims of the patents, describes an additional property of the polymer composition beyond "shear thinnable," and consistent with the property of thixotropy as conventionally defined and understood.  SUF 34; Arroyo Decl., Exh. 9, Meirowitz Depo. Tr. 328 (2-18) (7/30/08) (at lns. 11-15:  "… Thixotropic – is the patentee's attempt to describe additional reduction in viscosity, which to the patentee's knowledge base, he believed might be classical thixotropy.").

Despite the relevant references in the controlling priority application to the property of thixotropy as defined in the conventional sense, as well as additional references in the specifications of the patents-in-suit referring to the properties of the polymer composition as preferably "thixotropic" (*see* SUF 35), in order to support its claims in this action Nextec has taken the position that the term "shear thinning thixotropic" is synonymous with "shear thinning." In other words, Nextec's applied definition gives no effect to the added term "thixotropic."  *See* SUF 41.  Nextec's technical expert witness, Dr. Cole, acknowledged that the definition of the term used in formulating her opinion of alleged infringement was based on a definition of "shear thinning thixotropic" that is synonymous with the term "shear thinning." SUF 42; *see also* Arroyo Decl., Exh. 8, Cole Depo. Tr. 566 (25) – 567 (15) (at lines 13-15:  "I am using the inventor's [Nextec's] definition of thixotropic, which he uses synonymously with shear thinnable.").

In light of the definition adopted by Nextec for purposes of this action (which gives no added effect to the term "thixotropic"), Dr. Cole did not perform any tests to determine whether any of the coating compositions used in the accused process are actually "thixotropic" under its accepted technical meaning.  Arroyo Decl., Exh. 8, Cole Depo. Tr. 77 (10-16).  Moreover, Dr.

Cole also acknowledged that tests performed on behalf of Brookwood on the only coating composition that has been used in a commercial process ("M-1074B") actually demonstrate that this coating composition is *not* thixotropic in fact.  SUF 44; Arroyo Decl., Exh. 8, Cole Depo. Tr. Cole Tr. 75 (8-19) and 76 (6-15); Colasanto Decl. (Excerpts from Rebuttal Report) at ¶¶15-16, 18 & Exh. G.

        As noted in Brookwood's discussion of relevant precedents guiding the claim construction exercise, patent claims must be construed in a manner that gives meaning and effect to each term used in a claim.  *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("Allowing the patentee to argue that physical structures and characteristics specifically described in the claim are merely superfluous would render the scope of the patent ambiguous … For that reason, claims are interpreted with an eye toward giving effect to all terms in the claim."); *Elekta Instrument S.A.*, 214 F.3d at 1307 (Fed. Cir. 2000) ("The claim only encompasses 30 degrees – 45 degrees.  Any other conclusion renders the reference to 30 degrees superfluous."); *see also Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1379 (Fed. Cir. 2006) ("Moreover, the district court's construction of 'adjustable' renders that limitation nearly meaningless.").

        In light of these authorities, the term thixotropic must be given definite meaning in applying the claims from the '051 and '172 patents asserted in this action.  Accordingly, Nextec's failure to develop evidence specifically demonstrating that the accused processes utilize polymer compositions that are thixotropic, in fact, mandate the entry of summary judgment in Brookwood's favor on this issue.  *See Moore U.S.A. v. Standard Register Co.*, 229 F.3d 1091, 1112 (Fed. Cir. 2000) ("Moore bears the burden of proof on infringement, but has failed to provide any evidence demonstrating or even suggesting SRC's use of any printer other

than the IBM 3800 …"); *Elekta Instrument*, 214 F.3d at 1306 ("In order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device.").

## C.    The Asserted Claims Of The '841 System Patent Are Invalid As A Matter Of Law

Nextec's '841 patent is directed to a so-called system (i.e. apparatus) for placement of a polymer composition into a fabric web.  The asserted claims are in what is referred to as "means plus function" terminology, a form of claim permitted by 35 U.S.C. §112, ¶6, in which the elements of a machine are stated as a "means" for performing a specified function.  Means plus function claims are construed as covering the corresponding physical structure disclosed in the specification of the patent for performing the particular function, together with technical equivalents of the specific structure disclosed in the specification.  *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc*. 389 F.3d 1370, 1376 (Fed. Cir. 2004); *see also Kemco Sales, Inc. v. Control Papers Co*., 208 F.3d 1352, 1361 (Fed. Cir. 2000).

The claims originally presented in the application for the '841 patent were rejected by the U.S. Patent and Trademark Office on the basis that the prior art disclosed each of the "means" elements of the claimed system as originally presented for applying a "shear-thinned" polymer to the fabric web.  SUF 49; Arroyo Decl., Exh. 24, 8/2/00 Final Rejection at p. 5.[1]  As a result, the claims were not allowed until they were amended by Nextec to further add a so-called "means for pretreating and impregnating the porous web with a fluorochemical;" in other words, an apparatus for applying a fluorochemical water repellant to the fabric prior to

---

[1] "The apparatus, as claimed, comprises, in essence, a means for applying tension to a porous web, a means for applying a polymer composition to one surface of the web, and a means for forcing the polymer composition coated on the porous web into the body of the web itself.  Thus, given these limitations, the examiner must evaluate whether a prior art apparatus would be capable of performing these functions.  The examiner respectfully submits that the apparatus of Caldwell et al. [prior U.S. Patent 3,265,529] *would be capable* of operating in such a manner."  *Id*. (emphasis in original).

treatment with the polymer composition.  SUF 50; Arroyo Decl., Exh. 9, Meirowitz Depo. Tr.
645 (9) – 650 (4) (10/22/08) and *see* Exh. 25, Notice of Allowability at p. 2.

Nextec has acknowledged that it was known prior to the '841 patent to treat fabrics with
a fluorochemical water repellant and that the equipment defined by the claims of the '841
patent is conventional in nature, as also acknowledged in the specification of the '841 patent.
SUF's 52 and 53; *see* Arroyo Decl., Exh. 4, '841 patent, Col. 24 (lns. 22-30) ("Such a
saturation can be accomplished by various well-known techniques, …"); *see also* Exh. 9,
Meirowitz Depo. Tr. 638 (5-20) and Exh. 8, Cole Depo. Tr. 56 (14) – 57 (25).

Notably, in the present case, the equipment accused by Nextec of allegedly infringing
the '841 patent actually predates Nextec's claimed priority date for this patent, or March 10,
1989.  SUF 's 54 and 56.  While, as a general proposition, Brookwood ordinarily bears the
burden of demonstrating that the claims of the '841 patent correspond to its accused machine(s)
in order to establish the invalidity of the patent, in this case, Nextec's infringement contention
against the same equipment establishes this element of proof for purposes of the present motion
under established precedents.  *See Vanmoor v. Wal-Mart Stores, Inc*., 201 F.3d 1363, 1366
(Fed. Cir. 2000) ("As was the case in *Evans Cooling*, the entire basis of the patent infringement
claim is Vanmoor's (the patentee's) contention that the accused cartridges infringe the '331
patent … Although Wal-Mart and the manufacturer bore the burden of proving that the
cartridges that were the subject of the pre-critical date sales anticipated the '331 patent, that
burden was satisfied by Vanmoor's allegation  that the accused cartridges infringe the '331
patent."); *see also Evans Cooling System, Inc. v. General Motors Corp*., 125 F.3d 1448, 1451
(Fed. Cir. 1997).

The present motion is supported by declarations of relevant Kenyon Industries' personnel, as corroborated by various documents, demonstrating, for example, that Kenyon's Gas Frame Number 6 (which may be used to apply durable water repellants to fabrics prior to coating) was installed at Kenyon prior to May 1978, when Mr. Steve Nelson, Kenyon Industries' current Production Planner/Scheduler, first became employed at Kenyon.  Nelson Decl. ¶7 and Exh. C thereto (photo of equipment identification plate).  The gas frame itself bears a plate dated March 25, 1977.  *Id*. (*see also* similar information concerning Kenyon's Gas Frame No. 7) and Exh. B thereto.

Mr. Nelson was also personally familiar with the accused KK-1 coating apparatus as a result of his employment, having previously worked as an operator of the coater, as well as in the preparation of the coating formulations applied on the coater.  Nelson Decl. ¶8.  As further described in his declaration, each of the mechanisms presently used in applying and controlling the amount of coating applied to the fabrics was in use on the KK-1 coater prior to March 1987, well prior to the earliest filing date applicable to the '841 patent-in-suit.  Nelson Decl. ¶¶11-14 and 18 (and related exhibits).

These facts are also confirmed by the separate declaration of Benito Boiardi, a coating chemist employed by Kenyon for almost 38 years.  Mr. Boiardi's declaration also describes his personal involvement with the development of coating formulations applied on the KK-1 coater, including a particular formulation (S-2530) originally developed in 1980 and subsequently applied to a family of weather resistant fabrics marketed by Kenyon Industries under the trademark "Ken-Reign."  Boiardi Decl. ¶¶3 and 5-7 (and related exhibits).

The relevant facts related to the prior art status of Brookwood's accused equipment is also corroborated by the equipment itself, as still installed and operated at the Kenyon, Rhode

Island manufacturing facility of Kenyon Industries.  Nextec's expert witness on the issue of infringement, Dr. Cole, testified that the equipment used by Brookwood, and accused of infringing the asserted '841 patent, was "not inconsistent" with standard equipment used in the textile industry by the mid-1980s.  Dr. Cole also testified that, insofar as she was aware, the accused KK-1 apparatus could have been in place and used for the same purpose of coating fabrics as early as the priority date of the '841 patent.  SUF 63, Arroyo Decl., Exh. 8, Cole Depo. Tr. 139 (2-19); *see also* Tr. 127 (14) – 128 (20) and Tr. 403 (lns. 2-10) (at lns. 8-10: "They could be making products that infringed all the way back to the date of filing of the patents.").  In other words, Nextec could not identify any change to the accused apparatus in the intervening time frame that would materially affect the application of the coating compositions to the fabrics on Brookwood's KK-1 coating apparatus.  SUF 64; *see also* Nelson Decl. ¶18.

As a result, Nextec's accusation of infringement against Brookwood's KK-1 coating apparatus (and related prior art gas frames for applying durable water repellants) establishes the invalidity of the asserted claims.  *Vanmoor v. Wal-Mart Stores, Inc*., 201 F.3d at 1366; *Evans Cooling System, Inc. v. General Motors Corp*., 125 F.3d at 1451; *see also Hewlett-Packard Company v. Mustek Systems, Inc.*, 340 F.3d 1314, 1325-26 (Fed. Cir. 2003).

**D.    The Asserted Claim Of The '902 Patent Is Invalid As A Matter Of Law**

As noted previously, the claims of the remaining asserted patents should be construed in a manner that excludes prior art processes of the type used by Brookwood involving the use of significant concentrations of solvent in the coating formulation (in the manner distinguished by Nextec during the prosecution of relevant applications related to the Nextec patents).  If, for any reason, the Court does not adopt Brookwood's proposed construction of the disputed

claims affecting them collectively, and considers the claims of the asserted patents individually, then the '902 patent should be held invalid on one of two alternative grounds in light of Nextec's contentions in this action.

    1.    <u>The Claim of the '902 Patent is Invalid on the Basis of Double Patenting</u>

As noted in the factual discussion, the application leading to the asserted '902 patent (as well as two of the additional patents asserted by Nextec) claim priority through Application Serial No. 407,191, which resulted in U.S. Patent No. 5,876,792.  The prosecution of the application for the '792 patent is one of the instances where Nextec presented material arguments in support of patentability in which it stressed the fact that it did not use solvents as part of its process.  *See* SUF 11; Arroyo Decl., Exh. 12, Response To Office Action Dated December 23, 1996 (DDX. 19) at p. 14 ("... Applicant does not utilize solvents and shear thins viscous materials in the order of hundreds of thousands ($10^5$) to millions ($10^6$) of centipoise.").

In addition to its role in the proper construction of the claims asserted in this action, the '792 patent has additional significance to the validity of the sole claim of the '902 patent in light of 35 U.S.C. §101.  In particular, Section 101 provides that whomever invents or discovers any new and useful process, machine, manufacture or composition of matter (or new and useful improvements thereof), may obtain *a* patent therefor.  35 U.S.C. §101 (emphasis supplied).  The statute has been construed as prohibiting the grant of more than one patent claiming the same invention.  *In re Vogel,* 422 F.2d 438, 441 (C.C.P.A. 1970).

The definitive test for determining whether or not the "same invention" is claimed in two different patents remains the test established by the Court of Customs and Patent Appeals (one of the predecessor courts to the Federal Circuit Court of Appeals) in *In re Vogel*.  In that case, the court recognized that two different patent claims could be differently worded but still

define the "same invention" within the meaning of 35 U.S.C. §101.  As a result, the Court

prescribed an objective test for the determination of whether two claims are directed to the

same invention and, specifically, whether either claim could be literally infringed without also

literally infringing the other.  *See In re Vogel*, 422 F.2d at 441.  If one claim cannot be

infringed without also infringing the other claim, then the two claims are directed to the same

invention and the later patent claim is invalid.  *Id*.

In this case, the scope of claim 1 in both the '792 and '902 patents are indistinguishable

as a matter of law.  The '792 patent refers to a "method of controlled placement" of a shear-

thinnable polymer composition into a web, while the preamble of the '902 patent refers to a

method for "controlling the effective pore size of a web."  SUF 67.  Regardless, the active steps

required to perform the claimed methods are indistinguishable.  *Id*.  Both claims recite the

active steps of tensioning the web, applying a curable shear thinnable composition to the web

and then "shear thinning" the polymer composition sufficiently to reduce its viscosity and place

the composition in the web to "encapsulate at least some of the structural elements," while

leaving "most of the interstitial spaces open."  *See* SUF's 67 and 68.

Nextec's designated witness under Rule 30(b)(6) on the issue of infringement agreed

that the active steps defined by Claim 1 of both patents were "very similar," and could not

identify any material difference in the steps recited between the two claims that would avoid

infringement.  Arroyo Decl., Exh. 9, Meirowitz Depo. Tr. 781 (3) – 786 (11).  Since the alleged

inventions defined by Claim 1 of the '792 and '902 patents are indistinguishable in their

material scope of coverage, these claims are invalid for failure to comply with the requirements

of 35 U.S.C. §101 under the test specified by *In re Vogel*.

2.    The '902 Patent is Invalid in Light of the Prior Art

As noted in the immediately preceding section, Nextec's designated witness under Rule 30(b)(6), Fed.R.Civ.P. on the issue of infringement could not identify any material distinction between the actual, active steps specified in Claim 1 of the '792 and '902 patents, demonstrating the identity in the scope of coverage between the two claims.  Meanwhile, Nextec's technical expert witness, Dr. Cole, suggested a potential distinction in scope based on the limitation in Claim 1 of the '792 patent to a "curable shear thinnable polymer composition," while Claim 1 of the '902 patent refers to a "curable shear thinnable *material*" (as opposed to a "polymer" material specifically).  Arroyo Decl., Exh. 8, Cole Depo. Tr. 449 (2) – 450 (20).

Pursuant to 35 U.S.C. §112, the specification of a valid patent must contain a complete written description of the invention as claimed in the patent.  Accordingly, in order to claim the benefit of the filing date of an earlier filed application in the Patent Office (in order to avoid the potential invalidating effect of intervening prior art), the previously filed application also must satisfy the requirements of 35 U.S.C. §112 with respect to the alleged invention defined by the particular patent claim at issue.  *See Augustine Medical v. Gaymar Indus., Inc*., 181 F.3d 1291, 1302-03 (Fed. Cir. 1999).

If the earlier filed application does not satisfy the written description and other requirements under 35 U.S.C. §112 for the invention as actually claimed in the later application, then the newly presented patent claim(s) are only entitled to the *actual* filing date of the later application.  Arroyo Decl., Exh. 10, Becker Depo. Tr. 26 (13) – 28 (11); *see Tronzo v. Biomet, Inc*., 156 F.3d 1154, 1158 (Fed. Cir. 1998) (Where the Federal Circuit held that claims that were not limited to a specific shape for a "cup" used in a hip prosthesis were not supported by an earlier application that described the cup as a "trapezoid," "truncated cone," or

"conical shape: "A disclosure in a parent application that merely renders the later-claimed invention obvious is not sufficient to meet the written description requirement; the disclosure must describe the claimed invention with all its limitations."); *see also Turbocare Div. of Demag Delaval v. General Electric*, 264 F.3d 1111, 1119 (Fed. Cir. 2001).

        In this case, the specifications of the applications filed prior to the filing date of the specific application for the '902 patent on June 7, 1995 only refer to polymers for use as the treating composition.  For example, the Abstract of the '792 patent (from which the '902 patent claims priority) makes no fewer than six references to the treating composition as a polymer (and only as a polymer).  On the other hand, while the specification of the '902 patent also repeatedly refers to the use of "polymers," a newly added passage in Column 6 of the patent indicates that "any curable, thixotropic materials may be used to treat the webs of the present invention.  Such materials are *preferably* polymers, more preferably silicone polymers."  SUF 72, Arroyo Decl., Exh. 3, '902 patent at Col. 6 (lns. 40-42) (emphasis supplied).  This passage does not appear in the specification of the '792 patent, for example.  Arroyo Decl., Exh. 6 ('792 patent Abstract:  "The present invention relates to methods for the controlled placement of a curable, shear thinnable *polymer* composition into a porous web.") (emphasis supplied).[2]

        The '902 patent also claims priority to and through prior Application Serial No. 319, 778 which was filed on March 10, 1989.  This application actually issued as United States Patent No. 5,004,643 on April 2, 1991, more than four years before the actual filing date of the

_____

[2] In fact, the application for the earlier '051 patent only referred to *silicone* polymers specifically, with an allowance for the possible addition of other polymers, such as polyurethane, as an option.  Exh. 1, '051 patent at Col. 11 (lns. 7-11); Arroyo Decl., Exh. 10, Becker Depo. Tr. 97 (12) – 98 (23).  This disclosure was later modified and expanded in 1995 in the application for the '792 patent to provide that additional polymers, such as polyurethane, could be used as *alternatives* to silicone as the treating composition, thus broadening the disclosure in the latter application.  Exh. 6, '792 patent excerpt at Col. 11 (lns. 11-15); Exh. 10, Becker Depo. Tr. 99 (2) – 101 (19). As a result, the application for the '902 patent is not entitled to the filing date of the application for the '051 patent on this additional basis as well.

specific application for the '902 patent on June 7, 1995.  SUF 23; Arroyo Decl., Exh. 27.  As a result, unless the '902 patent is entitled to an earlier filing date, the intervening publication of the '643 patent in 1991 renders the claim of the '902 patent invalid as a matter of law since this earlier patent also discloses the concept of shear thinning a polymer and "encapsulating" fabrics.  *Id*., U.S. Patent No. 5,004,643, April 2, 1991; *see In re Curtis*, 354 F.3d 1347, 1351-52 (Fed. Cir. 2004) (Where the Federal Circuit held broadened claims invalid in light of the intervening publication of an earlier filed application at 1353:  "Nowhere in the examples, or in the remainder of the disclosure of the '962 application, does Curtis name a suitable friction enhancing coating for a PTFE dental floss other than MCW.").

The '643 patent may be considered an earlier publication of the '051 patent asserted in this action since the '643 patent contains the same technical disclosure.  In particular, the '051 patent is identified as a "continuation" of the application for the '643 patent (Serial No. 319,778) so that it must contain the same technical content as a matter of law.  SUF 73; Arroyo Decl., Exh. 8, Cole. Depo. Tr. 431 (17) – 432 (19); *Technology. Licensing Corp. v. Videotek, Inc*., 545 F.3d 1316, 1321 n. 2 (Fed. Cir. 2008) ("The difference between a continuation application and a continuation-in-part application is that a continuation contains the same disclosure found in an earlier application, whereas a continuation-in-part contains a portion or all of the disclosure of an earlier application together with added matter not present in the earlier application.")

Material witnesses acknowledged that practicing the process described in the '051 patent (which equates to the disclosure of the earlier published '643 patent as noted) would inherently affect the porosity of the treated web as claimed in the later '902 patent.  SUF 74; Arroyo Decl., Exh. 9, Meirowitz Depo. Tr. 82 (4) – 87 (15) (6/27/08) (particularly at 87 (3-11):

"Well, the teachings of the '051 patent can be used to affect pore size ... There is certainly enough information to affect pore size here."); *see also* Exh. 8, Cole Depo. Tr. 466 (16) – 467 (5).  As a result, the earlier published '643 patent describing the same, material process steps invalidates the later '902 patent as a matter of law.  *In re Curtis*, 343 F.3d at 1350; *Tronzo v. Biomet*, 156 F.3d at 1158  ("Thus, Biomet contends that claims 1 and 9 are ... anticipated under 35 U.S.C. §102(b) by intervening prior art, including Tronzo's British application which was published ... more than one year before the filing of the CIP application resulting in the '262 patent...").

In light of the foregoing, only one of two alternatives is possible.  Either the claims of the '902 patent are limited to polymeric compositions (since no other specific materials are disclosed in the patent), in which case the claim is invalid based on double patenting in light of the '792 patent, or the claim scope of the '902 patent is different and materially broader as asserted by Dr. Cole (to encompass more than "polymers"), in which case the claim is only entitled to the actual filing date of the specific application for the '902 patent.  In the latter case, the claim is invalid in light of the intervening publication of the '643 patent, which discloses the process for encapsulating fabrics.  In either case, the '902 patent is invalid as a matter of law.

## III.

## CONCLUSION

As demonstrated by the foregoing discussion, by virtue of statements contained in the specifications of the patents at issue distinguishing relevant prior art based on the use of solvents, as further reinforced in representations and arguments made in the course of prosecuting applications in the United States Patent Office, the terms "shear thinning" and

"shear thinnable" must be construed as limited to polymer compositions that do not include

material concentrations of solvent to aid in the application of the coating composition to the

fabric.  As it must be undisputed that the coating compositions utilized commercially by

Brookwood contain at least 60% solvent concentration (and are within the same viscosity

ranges as the representative coatings disclosed in the prior art Rudman patent), then the accused

processes and resulting products must be held to not infringe the claims of the remaining

patents asserted in this action as a matter of law.

     In the event that the Court does not adopt Brookwood's proposed construction of the

relevant claim terms for whatever reason, then summary judgment still should be entered in

Brookwood's favor on additional grounds applicable to selected patents as also established in

the preceding Memorandum.  With respect to the seven remaining claims asserted from the

'051 and '172 patents-in-suit, these claims must be dismissed in light of Nextec's failure to

establish that the coating compositions utilized by Brookwood are "thixotropic" as expressly

required by the limitations in each of these asserted claims.  In addition, summary judgment

should be entered in Brookwood's favor with respect to the '841 apparatus patent on the further

basis that, as Nextec seeks to apply these claims in the present action, the claims are invalid as

impermissibly encompassing prior art equipment utilized by Brookwood that pre-dates the

earliest filing date corresponding to the '841 patent.  As a result, any patent claim applied in the

manner urged by Nextec is invalid as a matter of law under controlling precedents.

     Finally, the claim of the '902 patent is also invalid as a matter of law on the alternative

grounds of double patenting in light of Nextec's prior '792 patent directed to the same method

or, if the claims are construed in an alternative manner as urged by Nextec's expert, then the

same claim is invalid based on the prior publication of an earlier Nextec patent disclosing the

same process for treating fabrics in accordance with Nextec's so-called "encapsulation" method.

In light of the foregoing, the entry of summary judgment in Brookwood's favor on one or more of the alternative grounds summarized above is respectfully solicited.

Respectfully submitted,

ALSTON & BIRD LLP

By: _____
Thomas J. Parker
ALSTON & BIRD, LLP
90 Park Avenue
New York, NY 10016-1387
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

Blas P. Arroyo
Jitendra Malik
Bank of America Plaza
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Telephone:  (704) 444-1000
Facsimile:  (704) 444-1111

Attorneys for Defendant

BROOKWOOD COMPANIES, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Memorandum in Support of Motion for Summary Judgment of Noninfringement and Patent Invalidity was served on the plaintiff electronically and by overnight courier, addressed to the following:

> Sean J. Kirby
> Sheppard, Mullin, Richter & Hampton LLP
> 30 Rockefeller Plaza, 24th Floor
> New York, NY 10112
> nextec@sheppardmullin.com
>
> Amar L. Thakur
> Jon E. Maki
> Michael Murphy
> Sheppard, Mullin, Richter & Hampton LLP
> 12275 El Camino Real, Suite 200
> San Diego, CA 92130
> nextec@sheppardmullin.com

This 17th day of July, 2009.

By Counsel