| | |
|---|---|
| NEXTEC APPLICATIONS, INC., ) | Case No. 07 CV 6901 (RJH) |
| ) | |
| Plaintiff, ) | **BROOKWOOD'S** |
| ) | **MEMORANDUM IN OPPOSITION** |
| v. ) | **TO PLAINTIFF'S MOTION FOR** |
| ) | **PARTIAL SUMMARY** |
| BROOKWOOD COMPANIES, INC., ) | **JUDGMENT OF INFRINGEMENT** |
| and THE HALLWOOD GROUP, INC., ) | **OF SELECTED CLAIMS** |
| ) | |
| Defendants. ) | |

Thomas J. Parker
ALSTON & BIRD, LLP
90 Park Avenue
New York, NY 10016-1387
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

Blas P. Arroyo
Jitendra Malik
Bank of America Plaza
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Telephone:  (704) 444-1000
Facsimile:  (704) 444-1111

Attorneys for Defendant

BROOKWOOD COMPANIES, INC.

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

I.    BACKGROUND ............................................................................................................... 1

II.    NEXTEC'S MOTION IS BASED ON AN IMPROPER LEGAL FRAMEWORK ....... 3

   A.  Nextec's Proposed Construction For The Claim Term "Thixotropic" Is
        Erroneous As A Matter Of Law ................................................................................ 3

      1.  The Disputed Term Must be Construed Consistently Across the
           Nextec Patents .................................................................................................. 3

      2.  Nextec's Proposed "Special Definition" is Unsupported by the Record
           and Contrary to Controlling Precedents ........................................................... 6

   B.  Nextec's Proposed Claim Construction Does Not Assign Essential
        Weight To The Prosecution History Associated With The Patents-In-Suit ............. 9

      1.  Nextec Distinguished its Claimed Subject Matter from the Prior
           Art on Bases that are Directly Applicable to the Accused Processes ............... 9

      2.  A Proper Construction of the Claims Must Exclude the Use of
           Material Concentrations of Solvents in the Polymer Composition ................. 12

   C.  Nextec's Motion Is Not Supported By Essential Proof On The Issue
        Of Infringement ...................................................................................................... 15

      1.  Nextec's Motion Must be Supported by Legally Sufficient Expert
           Testimony ........................................................................................................ 15

      2.  The Opinions of Nextec's Expert are Not Supported by Technically
           Competent Proof .............................................................................................. 17

      3.  Nextec's Burden of Proof is Not Satisfied by Other Evidence of Record .......... 19

III.   CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

Page

Cases:

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945 (Fed. Cir. 2006).................................................... 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) .................................. 16

*Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302
    (Fed. Cir. 2000). ....................................................................................................... 7

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997) ........................................................ 16, 18

*ICU Medical, Inc. v. Alaris Medical Systems, Inc.*, 558 F.3d 1368
    (Fed. Cir. 2009) ....................................................................................................... 8, 13

*In re Curtis*, 354 F.3d 1347 (Fed. Cir. 2004) ......................................................................... 9

*Kumho Tire v. Carmichael*, 526 U.S. 137 (1999) .................................................................. 19

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (*en banc*),
    *aff'd* 517 U.S. 370 (1996) ...................................................................................... 4

*Microsoft Corp. v. Multi-Tech Systems, Inc.*, 357 F.3d 1340 (Fed. Cir. 2004) ...................... 14

*NTP, Inc. v. Research in Motion Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) ................................... 5

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*).......................................... 8

*Phillips Petroleum v. Huntsman Polymers Corp.*, 157 F.3d 866
    (Fed. Cir. 1998) ....................................................................................................... 19

*Scimed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*,
    242 F.3d 1337 (Fed. Cir. 2001) ............................................................................... 13

*Springs Window Fashions LP v. Novo Industries LP*, 323 F.3d 989
    (Fed. Cir. 2003) ....................................................................................................... 13

*Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295
    (Fed. Cir. 2007) ....................................................................................................... 14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEXTEC APPLICATIONS, INC., ) | Case No. 07 CV 6901 (RJH) |
| ) | |
| Plaintiff, ) | **BROOKWOOD COMPANIES'** |
| ) | **MEMORANDUM IN OPPOSITION** |
| v. ) | **TO PLAINTIFF'S MOTION FOR** |
| ) | **PARTIAL SUMMARY JUDGMENT** |
| BROOKWOOD COMPANIES, INC., ) | **OF INFRINGEMENT OF SELECTED** |
| and THE HALLWOOD GROUP, INC., ) | **CLAIMS** |
| ) | |
| Defendants. ) | |

Nextec Applications, Inc. ("Nextec") has moved the Court for partial summary

judgment that defendant Brookwood Companies, Inc. ("Brookwood") has infringed one claim

from each of two patents that are asserted in this action, U.S. Patent Nos. 5,869,172 ("the '172

patent") and 5,954,902 ("the '902 patent").  As demonstrated below, Nextec's Motion is

predicated on an erroneous approach that ignores controlling legal principles governing the

proper interpretation and application of the disputed patent claims at issue.  In addition,

material elements of its claims for relief are unsupported by evidence essential to establishing

these claims.  As a result, Nextec's Motion for Partial Summary Judgment of Infringement

should be summarily denied.

## I.  BACKGROUND

Nextec's Motion opens with an introduction and discussion of the alleged background

facts surrounding this dispute in which it materially mischaracterizes the factual record in this

case.  For example, Nextec represents to the Court that Brookwood allegedly "informed" the

United States Government that "it would infringe Nextec's patents."  The allegation appears at

various places in Nextec's Memorandum, including at page 1 as part of its introduction and at page 4.

In reality, Brookwood's communication dated February 27, 2006, Exhibit 18 to Nextec's submission, does *not* state that Brookwood "would infringe Nextec's patents" unless the so-called "dynamic absorption" criteria was raised to 35% as Nextec represents. While the letter does indicate that Brookwood proposed a relatively higher target level of 35% for the specified property on all fabrics subject to the Gen III program, Brookwood did *not* indicate that these levels were necessary to avoid Nextec's patents. In fact, the additional correspondence submitted by Nextec (Exhibit 19 to its motion) clarifies that the *actual* applicable specification pertaining to the relevant Level V fabrics at the time of the correspondence was a significantly lower target level of *four percent (4%)*:

> … The samples we tested are described below:
>
> - Dynamic absorption number of 4% = Patent protected finish
>
> - Dynamic absorption number of 24% = Brookwood Windrider Plus finish

Exh. 19 to Nextec's Motion for Partial Summary Judgment of Infringement (Kirby Decl.), Letter dated 3/10/06; *see also* Exh. 29 to Clayton Decl., Young Depo. Tr. 169 (2-16).

Thus, the only measurement attributed to Nextec's patents with respect to the property of dynamic absorption (and with respect to the Level V fabrics in particular) was 4%, not 35% as Nextec represents. Moreover, all that the referenced correspondence demonstrates is Brookwood's initial understanding that certain properties reflected in the *preliminary* draft specifications were associated with Nextec's fabrics, and Brookwood's objective to *avoid* any potential issue with Nextec's patent rights.

2

As Nextec is also well aware, the preliminary draft specifications for the Gen III solicitation went through numerous revisions so that the final specification with respect to dynamic absorption for the Level V fabrics was increased as requested by Brookwood (to 25% with respect to the Level V fabrics), far in excess of the 4% value for these fabrics at the initial pre-solicitation stage as reflected in the correspondence.  Exh. 29 to Clayton Decl., Young Depo. Tr. 152 (13) – 153 (18); *see also* Tr. 190 (5-15).

Accordingly, the record does not contain any admission of infringement, express or implied, on the part of Brookwood.  To the contrary, while the record does reflect that Brookwood evaluated Nextec fabrics in the ordinary course of business, as customary in the industry, the record also demonstrates that Brookwood undertook its own development efforts, using its own technology, in order to meet the relevant criteria associated with the Gen III program as these criteria evolved over time.  Indeed, while Nextec attempts to create the illusion that Nextec's fabrics were synonymous with the Gen III specifications, Brookwood learned later that Nextec could not actually meet material aspects of the same specifications. Exh. 29 to Clayton Decl., Young Depo. Tr. 176 (5-13) (at lines 11-13: "We learned later they didn't, but it was our understanding that they did at this point.").

Thus, Brookwood was not engaged in any effort to produce fabrics having the same properties as Nextec's commercial fabrics, but rather to produce fabrics meeting the specifications as actually adopted by the Government for the Gen III program and based in part on Brookwood's input in an effort to avoid any issue with Nextec's patent rights. [1]

---

[1] Nextec's Memorandum also indicates that a former employee testified that Nextec's patented fabrics were a "gold mine to replicate."  In reality, the testimony reflects a material transcription error.  The witness actually testified, with respect to the definition of a "benchmark" generally, that benchmarks represented a "goal of mine," not a "gold mine."  The error is reflected on the corrections made to the testimony by the witness, which was

## II.  NEXTEC'S MOTION IS BASED ON AN
## IMPROPER LEGAL FRAMEWORK

**A.     Nextec's Proposed Construction For The Claim Term "Thixotropic" Is Erroneous As A Matter Of Law**

    1.      The Disputed Term Must be Construed Consistently Across the Nextec Patents

In order to resolve the issues raised by Nextec's Motion for Partial Summary Judgment on the issue of infringement, the proper meaning of certain disputed terms as used in the patent claims at issue must be determined.  This is an issue of law for resolution by the Court. *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd* 517 U.S. 370 (1996).

As part of its submission, Nextec presents a table at pages 9-10 of its Memorandum in Support containing proposed definitions for various terms used in the claims at issue in the case.  While Brookwood does not necessarily agree with the definitions proposed by Nextec for all of the various terms, it is not necessary to define each of these terms in order to resolve the issues presented by Nextec's Motion.  Rather, in order to resolve the issues related to the asserted claims of the '172 patent (including Claim 110 which is part of Nextec's present Motion), as well as the additionally asserted claims from the '051 patent not specifically at issue in Nextec's present Motion, the Court need only determine the proper interpretation of the requirement in these claims for the use of a "shear thinnable *thixotropic*" polymer.  In fact, this material limitation is present in 7 of the 10 claims that remain at issue in this action.

In light of the relatively straightforward nature of the issues related to the proper interpretation of the disputed claim term "thixotropic," and Nextec's related failure to offer any evidence that the accused polymer compositions utilized by Brookwood are actually thixotropic

---

furnished to Nextec.  The error also can be verified by reference to the videotape of the deposition.  *See* Exh. 30 to Clayton Decl., O'Keefe Depo. Errata Sheet.

in fact, Brookwood has itself moved the Court for the entry of summary judgment of noninfringement with respect to all of the claims containing this limitation, including Claim 110 of the '172 patent involved in Nextec's present Motion.  Accordingly, the grant of Brookwood's Motion will also resolve the disputed issue for purposes of Nextec's present Motion.

In support of its own Motion for Summary Judgment of Noninfringement (D.E. 89), Brookwood presented evidence from the specifications of the patents at issue, including numerous references to the preference for using a polymer that was "thixotropic," without any qualification or special definition.  *See* D.E. 94, Colasanto Decl., ¶¶8-11.  As also demonstrated in support of Brookwood's Motion, the terms "thixotropic" and "shear thinnable" (or the equivalent "shear thinning") have well known, established meanings in the chemical field.  *See* D.E. 91, Brookwood's Statements of Undisputed Facts ¶¶31-37 (and supporting evidence); *see also* D.E. 94, Colasanto Decl. ¶¶6-7.  The accepted technical meanings for these terms were acknowledged by Nextec's expert witness in this action, as well as in literature cited by Nextec's expert in support of her own rebuttal expert report.  *See* D.E. 91, Brookwood's Statement of Undisputed Facts ¶¶ 27-30 (and supporting evidence cited therein).

As also noted in Brookwood's Memorandum in Support of its own Motion for Summary Judgment of Noninfringement, where a series of patents are derived from the same parent application(s), and share common terms, these terms should be interpreted consistently across all of the asserted patents.  *See, e.g*., *NTP, Inc. v. Research in Motion Ltd*., 418 F.3d 1282, 1293 (Fed. Cir. 2005).  In this case, both the '051 patent (not specifically at issue in Nextec's present Motion) and the '172 patent at issue in the motion specify the use of a "shear thinnable thixotropic" polymer composition, whereas other patents assigned to Nextec only

specify the use of a "shear thinning" or "shear thinnable" polymer.  In addition, both the '051 and '172 patents rely for their earliest priority date on the '630 application, which was filed in the United States Patent Office on March 14, 1988.  *See* D.E. 91, Statement of Undisputed Facts in Support of Brookwood's Motion, ¶¶31-33.

As demonstrated by the supporting materials filed with Brookwood's Motion for Summary Judgment of Noninfringement, the '630 priority application on which Nextec relies for its earliest claim of priority identifies "thixotropy" as a preferred property of the polymers to be used in connection with the alleged invention.  The use of the term "thixotropic" in these various passages is consistent with the ordinary and accepted meaning of the term as used in the chemical field, as referring to the property of a polymer in which its viscosity decreases over time in response to a steady or constant shear force.  *See* D.E. 94, Colasanto Decl. ¶9; *see also* D.E. 91, Brookwood's Statement of Undisputed Facts ¶33 and Exh. 18 to Brookwood's Motion (Arroyo Decl., D.E. 92), Excerpt from '630 Application at p. 87 (22) – 88 (15) ("It is always somewhat disconcerting to take a viscosity reading under a *constant* shear rate and find that the viscosity drifts downward under the steady shear rate condition … This type of flow is typical of a thixotropic system.") (emphasis supplied); *see also* D.E. 94, Colasanto Decl. ¶¶6-12.

> 2.    Nextec's Proposed "Special Definition" is Unsupported by the Record and Contrary to Controlling Precedents

In order to support its claim of infringement, Nextec proposes that the Court adopt a special meaning for the term "thixotropic" that disregards the accepted technical meaning for this polymer property as recognized in the relevant field.  Nextec's proposed special "definition" is based on a passage that appears at Col. 18, lns. 28-36 of the '172 patent (Exh. 6 to Nextec's submission) as follows:

> The word "thixotropy" refers herein to liquid flow behavior in which the viscosity of a liquid is reduced by shear agitation or stirring so as to allow the placement of the liquid flow to form: (a) a thin film of a polymer composition encapsulating the structural elements (i.e. the fibers or filaments) making up the web leaving at least some of the interstitial spaces open; (b) an internal layer of a polymer composition between the upper and lower surfaces of the web; or (c) some combination of the foregoing.

As is evident from the above passage, Nextec's proposed "definition" is no definition at all. Rather, the passage only indicates that a composition is thixotropic if it has shear thinning properties (as also specified by the claim) and provides a result that is also otherwise specified by the claims of the patent. In other words, Claim 110 of the '172 patent specifies that the shear thinning thixotropic composition is exposed to "sufficient energy to cause the thixotropic material and modifier it to flow into the web and position within the fabric." Accordingly, if "thixotropic" only means that the polymer will flow into the fabric to form a thin film of the polymer composition (i.e. as otherwise specified by additional limitations of the claims), then the term "thixotropic" itself is rendered superfluous, which is contrary to established precedents on the proper construction of patent claims. *See Bicon, Inc. v. Straumann Co*., 441 F.3d 945, 950 (Fed. Cir. 2006); *see also Elekta Instrument S.A. v. O.U.R. Scientific Int'l., Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000).

Nextec's technical expert witness, Dr. Cole, conceded that her opinion of infringement was based on a definition of "shear thinning thixotropic" that was synonymous with shear thinning. *See* Exh. 8 to Brookwood's Motion (Arroyo Decl., D.E. 92), Cole Depo. Tr. 566 (25) – 567 (15) (at lines 13-15: "I am using the inventor's [Nextec's] definition of thixotropic, which he uses synonymously with shear thinnable."). Accordingly, Nextec's proposed "special definition" must be rejected as it would give no effect to the disputed term at issue, contrary to the authorities cited previously. *See Bicon, Inc. v. Straumann*, 441 F.3d at 950 ("Allowing the

7

patentee to argue that physical structures and characteristics specifically described in the claim are merely superfluous would render the scope of the patent ambiguous … For that reason, claims are interpreted with an eye toward giving effect to all terms in the claim.").

Nextec's attempted reliance on the identified passage from the specification of the '172 patent as supplying a special definition for the term "thixotropic" also fails for an additional reason. The specific application for the '172 patent, containing the relevant passage on which Nextec seeks to rely, was not filed with the Patent Office until May 17, 1995, claiming priority through a chain of applications to the earliest asserted filing date of March 14, 1988 based on the '630 application discussed previously (containing the description of thixotropy that conforms to the conventional technical definition). Notably, the passage relied upon by Nextec as supplying its proposed special definition does *not* appear in the previous applications in the chain of priority and, of particular significance, does not appear at all in the '630 application as filed in March of 1988.

It is well settled that the terms used in a patent claim are construed *as of the effective filing date* of the relevant patent application. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*); *see also ICU Medical, Inc. v. Alaris Medical Systems, Inc.*, 558 F.3d 1368, 1374 (Fed. Cir. 2009). Thus, if Nextec wishes to maintain its claim of priority to the March 14, 1988 filing date, then the term "thixotropy" must be construed in accordance with the specification of that priority application. Otherwise, if the Court relies on the specified passage as urged by Nextec and adopts Nextec's proposed special definition for the term "thixotropy" based on the added disclosures in the '172 patent, then the Court must correspondingly determine that the effective filing date of any claim relying on this description is May 17, 1995 for all other purposes in this action, including for determinations of patent

invalidity in particular. *See In re Curtis*, 354 F.3d 1347, 1351-52 (Fed. Cir. 2004). This also poses an additional dilemma for Nextec under the circumstances of this case since the '051 patent, which also contains the same limitation to a "thixotropic" polymer, does not contain the referenced passage from the specification of the '172 patent.

Accordingly, the only appropriate construction for the term "thixotropic" that comports with controlling principles of patent claim construction is the construction which accords this term its ordinary and customary meaning as understood by persons of skill in the field, and consistent with its usage in Nextec's earliest priority application. Otherwise, Nextec will achieve a construction of the term "shear thinning thixotropic," that is the same as "shear thinning," which is clearly improper.

Since Nextec has offered no evidence that the accused coating processes and related formulations are thixotropic in fact in accordance with the proper construction of the term, then Nextec's Motion must be denied with respect to asserted Claim 110 from the '172 patent. Furthermore, and on the same basis, Brookwood's counterpart Motion for Summary Judgment of Noninfringement of the claims containing the same limitation should be granted, dismissing Nextec's seven asserted claims from the '051 and '172 patents.

**B.      Nextec's Proposed Claim Construction Does Not Assign Essential Weight To The Prosecution History Associated With The Patents-In-Suit**

1.      Nextec Distinguished its Claimed Subject Matter from the Prior Art on Bases that are Directly Applicable to the Accused Processes

Both of the claims at issue in Nextec's present Motion specify in part the use of a "shear thinnable" polymer material (and, in the case of the '172 patent, that is additionally thixotropic). The claims also specify, as an added step, the application of shear thinning energy

to cause the "shear thinnable material to flow into the web," as in the case of the '902 patent at issue in Nextec's Motion.

As noted in Brookwood's separate Motion for Summary Judgment of Noninfringement, the specifications of the patents-in-suit include a discussion in the background section purporting to distinguish known coating processes from the alleged inventions on the basis that known prior art processes used low viscosity compositions or solvents "to aid in the flow of the composition":

> *Prior art treatment of webs that force a composition into the spaces of the web while maintaining some breathability have relied on using low viscosity compositions or solvents to aid in the flow of the composition.* U.S. Pat. No. 3,594,213 [Rudman] describes a process for impregnating or coating fabrics with liquefied compositions to create a breathable fabric. This patent imparts no energy into the composition to liquefy it while forcing it into the spaces of the web. *The composition is substantially liquefied before placement onto and into the web.* U.S. Pat. No. 4,588,614 teaches a method for incorporating an active agent into a porous substrate. *This patent utilizes a solvent to aid in the incorporation of the active agent into the web…*

D.E. 91, Statement of Undisputed Facts in Support of Brookwood's Motion, ¶9; *see also* Exh. 2 to Brookwood's Motion (Arroyo Decl., D.E. 92), '172 patent excerpt at Col. 3 (25-38) and Exh. 4, '841 patent excerpt, Col. 3 (11-22). (emphasis supplied)

Nextec continued its efforts to distinguish known prior art treatments during prosecution of its applications in the Patent Office, presenting arguments stressing the alleged significance of the prior art's use of material concentrations of solvents and emphasizing that the solvent "plays a critical role in the amount of penetration of the treating composition" in the prior art cited by the Patent Office:

> In addition to the above, Lauchenauer (4,588,614) utilizes solvents to aid in the penetration of the gel into the porous substrate ... The solvent plays a critical role in the amount of

penetration of the gel (see abstract).   Once the solvent is evaporated, the degree of penetration is halted.   Applicant does not utilize solvents and shear thins viscous materials in the order of hundreds of thousands ($10^5$) to millions ($10^6$) of centipoise.

D.E. 91, Statement of Undisputed Facts in Support of Brookwood's Motion, ¶11; *see also* Exh. 12 to Brookwood's Motion (Arroyo Decl., D.E. 92), Response To Office Action Dated December 23, 1996 (DDX-19) at p. 14 (emphasis supplied) and Exh. 10, Becker Depo. Tr. 51 (5) – 52 (6).

Similar arguments were also presented in the file pertaining to the '902 patent asserted in this action, distinguishing the Rudman prior art process and product on the basis of the use of solvents in alleged contrast to the use of a "shear thinned material."   *See* D.E. 91, Statement of Undisputed Facts in Support of Brookwood's Motion, ¶12; *see also* Exh. 13 to Brookwood's Motion (Arroyo Decl., D.E. 92), Response to Office Action dated October 7, 1996 (DDX-111) at p. 26-27 ("The liquid material utilizes solvents and would be expected to saturate the fabric resulting in a different product than described in the present patent application.").

Notably, the distinctions argued by Nextec to the Patent Office in order to secure the asserted patent rights are directly applicable to the accused coating process used by Brookwood.   Thus, for example, Brookwood also uses "liquefied compositions" in the same viscosity ranges as disclosed in the Rudman patent, and as acknowledged by Nextec's technical expert in this action.   *See* D.E. 91, Statement of Undisputed Facts in Support of Brookwood's Motion ¶¶18-19 and Exh. 8 to Brookwood's Motion (Arroyo Decl., D.E. 92), Cole Depo. Tr. 235 (9-17); 236 (14-18); 237 (9-16) and 242 (2) – 243 (2).   Dr. Cole also testified that the representative coating compositions disclosed in the Rudman patent would be "shear thinnable" and that the physical arrangement of the polymer composition relative to the coating blade and other elements shown in the Rudman patent were the same as in the accused Brookwood

11

apparatus and process.  *See* Exh. 8 to Brookwood's Motion (Arroyo Decl., D.E. 92), Cole

Depo. Tr. 188 (5-14) and Tr. 157 (5) – 158 (2).

      2.      A Proper Construction of the Claims Must Exclude the Use of Material
              Concentrations of Solvents in the Polymer Composition

While it is fundamental that the material disclosures of the prior art and related

prosecution history impact the claim construction exercise, nowhere in its submission does

Nextec make any effort to propose a claim construction for the terms "shear thinning," or the

additional specified requirement in the claims for subjecting the material to "sufficient shear

thinning energy to cause the shear thinnable material to flow into the web," in any fashion that

acknowledges the significance of the material representations made to the Patent Office in an

effort to secure the relevant patent rights in the first instance.  To the contrary, Nextec simply

brushes aside the relevant prosecution history at pp. 18-19 of its Memorandum with the

conclusory assertion that the Nextec patents "cover the use of solvents to dilute polymers."

According to Nextec, the Court should disregard the significance of its multiple

representations to the Patent Office on the basis of an Examiner's Amendment in the file

pertaining to the '792 patent in which additional dependent claims were added specifying that

the claimed products under those claims were "essentially free of solvent."  *See* Nextec Memo

at p. 19 and Exh. 17 to Nextec's Motion.  The basis for the addition of these claims to the

application for the '792 patent is entirely unclear, however, since the relevant communication

only refers to a "telephone interview on October 7, 1997."  As a result, there is no summary of

any discussion to shed light on the meaning of these amendments.  *Id.*

The fact that there may be dependent claims in the '792 patent to products that are

"essentially free of solvent" (i.e. free of solvent except for possible trace quantities), does not

mean that the *independent* claims should be construed as encompassing processes that utilize

unlimited concentrations of solvents, and especially solvent concentrations (and related viscosities) of the magnitude exemplified by the prior art distinguished by Nextec in its relevant arguments to the Patent Office.  Indeed, the Federal Circuit has stated on multiple occasions that the doctrine of "claim differentiation," on which Nextec seeks to rely, is *not* a substitute for claim construction since claim differentiation is only one of many claim construction tools.  As a result, the Federal Circuit has approved claim constructions in which an element recited in an independent claim was given the same scope as specified in a dependent claim directed to the same feature.  *See ICU Medical, Inc. v. Alaris Medical Systems, Inc*., 558 F.3d 1368, 1376 (Fed. Cir. 2009) (rejecting patentee's argument that a claimed "spike" need not be pointed based on the recitation in a dependent claim specifically providing for that feature).

Accordingly, Nextec cannot sweep its material representations under the rug on the basis of the doctrine of claim differentiation, where the record otherwise demonstrates a series of representations, literally over a span of years, in different applications purporting to distinguish the alleged invention on the basis that the prior art utilized material concentrations of solvent in the treatment polymer.  To the contrary, the authorities are clear that the public is entitled to rely on these representations in determining what the alleged invention is or is not. *See Scimed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1343 (Fed. Cir. 2001) ("That discussion in the written description supports the district court's conclusion that the claims should not be read so broadly as to encompass the distinguished prior art structure."); *see also Springs Window Fashions LP v. Novo Industries LP*, 323 F.3d 989, 995 (Fed. Cir. 2003) ("The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of the patent."). Accordingly, these statements by Nextec must be given weight and significance in construing

the claims in this action.  *See, e.g. Microsoft Corp. v. Multi-Tech Systems, Inc.*, 357 F.3d 1340,

1349-50 (Fed. Cir. 2004); *see also Verizon Services Corp. v. Vonage Holdings Corp*., 503 F.3d

1295, 1307 (Fed. Cir. 2007) ("Verizon argues that a disclaimer in the '291 application process

(leading to the '497 patent) should not apply to the '880 patent because it occurred after the

'880 patent issues.  We reject this argument.").

Thus, even if the independent claims of the '792 patent not directly at issue in this case

are interpreted to allow for the inclusion of *some* amount of solvent beyond trace amounts (i.e.

something more than "essentially free of solvent") the claims must also be interpreted to

exclude material concentrations of solvent that affect the application of the polymer to the

fabric.  Indeed, Nextec's own submission tacitly acknowledges the need to exclude processes

utilizing material concentrations of solvents when it argues at the top of page 19 of its

Memorandum that the claims may apply to processes that include solvents, as long as the

process *does not rely* on solvents (emphasis in original).

Accordingly, and at a minimum, the Court should construe the claims in a manner that

excludes any process involving the use of material concentrations of solvents, as exemplified

by the conventional prior art coating processes distinguished by Nextec in the specifications of

the patents-in-suit and the related prosecution history.  This certainly should include any

process that uses at least a 50% solvent concentration in the coating composition (since such

use would inherently "rely" on the use of solvents).

As it must be undisputed from Brookwood's demonstration in support of its own

Motion for Summary Judgment that the accused process utilizes more than *sixty percent*

solvent concentration (see D.E. 91 Statement of Undisputed Facts in Support of Brookwood's

Motion, ¶16), by definition Brookwood's process utilizes a material concentration of solvent

that is outside any reasonable range of solvent concentration that can be encompassed by Nextec's claims in light of the relevant prosecution history.  Accordingly, Nextec's Motion for Summary Judgment of Infringement must be denied on this additional basis.

**C.     Nextec's Motion Is Not Supported By Essential Proof On The Issue Of Infringement**

      1.      Nextec's Motion Must be Supported by Legally Sufficient Expert Testimony

In order to establish infringement of the asserted claims, Nextec must demonstrate, by reference to Claim 1 of the '902 patent, for example, that Brookwood's process includes subjecting the polymer composition to "sufficient shear thinning energy to cause the shear thinnable material to flow into the web, selectively position within the web and form a thin film substantially encapsulating" at least some of the so-called structural elements of the web.  As noted in the immediately preceding section, Nextec must also demonstrate that any accused process does not rely on the use of material concentrations of solvent to aid in the application of the polymer.

In this case, Nextec has offered no credible and properly substantiated evidence of the nature required to support its Motion, and specifically evidence demonstrating that, in the accused Brookwood process, "sufficient shear thinning energy" is applied to actually cause "the shear thinnable material to flow into the web" as required by the claims.  Rather, the only evidence offered by Nextec in support of its request for summary judgment on the issue of infringement are conclusory statements from its expert witness, based primarily on an examination of selected Scanning Electron Micrographs of Brookwood coated fabrics.  *See, e.g.* Exh. 2 to Nextec's Motion (Nextec's expert contentions) at pp. 9-10 (re the '902 patent).

A motion of the type submitted by Nextec, seeking an affirmative determination of actual patent infringement, must be supported by admissible, technically competent evidence that itself does not raise a disputed issue of material fact.  In this connection, the Court must perform its essential "gatekeeper" function in the context of summary judgment with respect to any evidence of a scientific or technical nature that is offered in support of the motion, consistent with the guidelines established in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993).  *See General Electric Co. v. Joiner*, 522 U.S. 136, 142 (1997).

As noted previously, the record in this case is replete with instances in which Nextec's technical expert, Dr. Cole, acknowledged material similarities between the equipment, processes and compositions disclosed in the prior art Rudman patent, for example, and the accused coating process practiced by Brookwood.  Dr. Cole conceded, for example, that the viscosity ranges of the "liquefied" polymer compositions disclosed in the Rudman patent overlap with the viscosities of the coating compositions used by Brookwood in its accused process.  D.E. 91, Statement of Undisputed Facts in Support of Brookwood's Motion, ¶¶18-19 (and supporting evidence cited therein).  Dr. Cole also acknowledged the similarities in the equipment arrangement of the coating blade to the polymer and that both apparatuses (Rudman and Brookwood's KK-1 apparatus) are knife over air coaters.  *See Id.*, Statement of Undisputed Facts, ¶7.

Dr. Cole also conceded in her deposition that the treated fabric depicted in the prior art Rudman patent incorporated an "internal layer" of polymer (the claimed result of Nextec's process) within the meaning of the patents-in-suit.  Exh. 31 to Clayton Decl., Cole Depo. Tr. 201 (16 – 24).  In addition, Nextec's designated witness under Rule 30(b)(6) on the issue of infringement testified that the apparatus depicted in the Rudman patent could be used to

practice so-called "shear thinning" as claimed in the patents.  *See* D.E. 91, Statement of Undisputed Facts in Support of Brookwood's Motion, ¶8 (and supporting evidenced cited therein).

In light of all of the acknowledged similarities between the prior art and the accused process it seems essential that, in order to sustain a claim for alleged patent infringement, Nextec must demonstrate a materially significant step or result in the accused process and products that could be differentiated from the corresponding prior art techniques and that this difference can be established utilizing a scientifically accepted methodology.  In reality, Nextec's proofs satisfy neither requirement.

> 2.   The Opinions of Nextec's Expert are Not Supported by Technically
> Competent Proof

While acknowledging numerous material similarities between the disclosures of the Rudman patent and the accused coating process, Dr. Cole also attempted to distinguish the process disclosed in the Rudman patent from the subject matter claimed in the Nextec patents. According to Dr. Cole, the conventional coating processes exemplified by Rudman allegedly involve a technique that she referred to as "pressuring" of the polymer as allegedly distinguished from "shear thinning."  Notably, Dr. Cole also testified that it was *not possible* to determine whether a polymer had been "pressured" or "shear thinned" into the fabric based on an examination of the finished fabric itself.  *See* D.E. 91 Statement of Undisputed Facts In Support of Brookwood's Motion for Summary Judgment, ¶¶20-21; *see also* Exh. 8 to Brookwood's Motion for Summary Judgment (Arroyo Decl., D.E. 92), Cole Depo. Tr. 239 (15) – 240 (17); and Tr. 279 (10) – 280 (2).

Dr. Cole acknowledged that, as part of her involvement in this case, she did not perform *any* experiments utilizing materials known to have been "shear thinned" in order to cause the

polymer material to flow into the fabric, as required by the claims of the patents-in-suit, and as at least ostensibly distinguished from materials in which the polymer was "pressured" into the fabric according to Dr. Cole's characterization of the prior art.  *See* Exh. 8 to Brookwood's Motion for Summary Judgment, (Arroyo Decl., D.E. 92), Cole Depo. Tr. 240 (7-25); 569 (2) – 570 (7).  Indeed, Dr. Cole formulated her opinion of alleged infringement, including her opinion that the accused processes used compositions that were "shear thinning," without performing any tests on the various coating compositions used by Brookwood to make the accused fabrics.  See Exh. 8 to Brookwood's Motion (Arroyo Decl., D.E. 92), Cole Depo. Tr. 263 (17) – 264 (10); *see also* Exh. 31 to Clayton Decl., Cole Depo. Tr. 274 (22) – 276 (12).

According to Dr. Cole's deposition testimony, coatings may be present within the constructs of the fabric, either as a result of shear thinning or through the technique referred to by Dr. Cole as "pressuring" of the coating composition (with the aid of solvents) as disclosed in the Rudman patent.  Exh. 8 to Brookwood's Motion (Arroyo Decl., D.E. 92), Cole Depo. Tr. 271 (4-19); 272 (24) – 273 (4) ("One could practice Rudman, yes.").  Since Dr. Cole did not perform any work to serve as a valid basis for differentiating between fabrics to which coatings have been applied by "pressuring" as opposed to "shear thinning" as required by the claims of the asserted patents, Nextec cannot satisfy its burden of proof with respect to the material elements of the asserted process in reliance on Dr. Cole's conclusory opinions.

In light of the absence of any technically sound, underlying basis for differentiating between known, prior art techniques for coating fabrics as exemplified by the Rudman patent on the one hand, and the patented methodology on the other, Dr. Cole's testimony cannot satisfy the requirements for credible expert evidence supporting Nextec's claim of alleged infringement as a matter of law.  *See General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)

("But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data by the *ipse dixit* of the expert."); *Kumho Tire v. Carmichael*, 526 U.S. 137, 157 (1999) ("We have found no indication in the record that other experts in the industry use Carlson's two factor test or that tire experts such as Carlson normally make the very fine distinctions about, say, the symmetry of comparatively greater shoulder tread wear that were necessary, on Carlson's own theory, to support his conclusions."); *see also Phillips Petroleum v. Huntsman Polymers Corp*., 157 F.3d 866, 876 (Fed. Cir. 1998).[2]

      3.     <u>Nextec's Burden of Proof is Not Satisfied by Other Evidence of Record</u>

At page 18 of its Memorandum, Nextec attempts to bootstrap its "proof" on the issue of infringement by referring to the testimony of an expert witness on behalf of Brookwood, Dr. Hauser. In particular, Nextec refers to Dr. Hauser's testimony acknowledging minor "penetration" of one of the coating formulations within one of the accused fabrics. Of course, nowhere in its submission does Nextec demonstrate that so-called "penetration" of the coating composition is synonymous with the requirements of the asserted claims (i.e. shear thinning energy that is sufficient to *cause* the material to "flow into the web"). To the contrary, the background discussion in the patents themselves acknowledge that, in conventional prior art coating processes, the coating composition may be "urged" into the surface regions of the fabric by the action of the coating blade. Exh. 1 to Brookwood's Motion for Summary Judgment (Arroyo Decl., D.E. 92), '051 Patent at Col. 3 (15-17); *see also* Exh. 8 to Brookwood's Motion, Cole Depo. Tr. 350 (18) – 351 (11).

---

[2] Dr. Cole did not have any previous experience with commercial apparatuses for coating fabrics. In fact, Kenyon's KK-1 coater was the first commercial coater she observed. Exh. 31 to Clayton Decl., Cole Depo. Tr. 10 (4-13).

In any event, Dr. Hauser's testimony concerning the observation of very minor penetration of some coating into an accused fabric sample cannot satisfy Nextec's burden of proof on the issue of infringement as a matter of law, since Dr. Hauser also clearly testified that the minor degree of coating penetration evident in the SEM's of the Brookwood fabrics was entirely consistent with conventionally coated fabrics.  Exh. 32 to Clayton Decl., Hauser Depo. Tr. 197 (23) – 198 (15) (at 5-9: "In these images that we were looking at the amount of potential or possible penetration at least in the Brookwood fabrics in my opinion is so minimal and so random that it looks like it is from a standard conveniently (sic – conventional) coated fabric."); *see also* Tr. 114 (6) – 115 (8) (degree of penetration similar to prior art fabrics) and Tr. 98 (14-24).  As a result, Dr. Hauser's testimony only serves to demonstrate the *presence* of a disputed issue of material fact on the issue of alleged infringement that defeats Nextec's Motion for Summary Judgment on this issue as a matter of law.

### III.  CONCLUSION

As demonstrated by the foregoing discussion, Nextec's Motion for Summary Judgment on the issue of infringement of the method claims from the '172 and '902 patents-in-suit is fundamentally flawed on multiple grounds and must be summarily denied.  First of all, Nextec's Motion based on the '172 patent relies on attributing a special meaning to the term "thixotropic" that is based on a written description first presented in 1995, seven years after the earliest priority date asserted by Nextec.  Since the disputed claim term must be construed as of the time of the actual claimed priority date, there is no valid basis supporting Nextec's alleged special definition (and which would also render the term superfluous contrary to established legal precedents).  As a result, the ordinary and customary definition of the term "thixotropic"

controls, so that summary judgment is actually appropriate in Brookwood's favor on this issue based on its separate Motion for Summary Judgment directed in part to the same issue.

Nextec's Motion also must be denied in light of Nextec's failure to establish infringement under any claim construction that takes into account numerous representations to the Patent Office over a period of years purporting to differentiate the prior art on the basis that the Nextec process did not use material concentrations of solvents in the polymer composition. In light of these relevant arguments (and counterpart statements in the background section of the patents-in-suit), the claims at issue must be construed as excluding processes in which material concentrations of solvent are utilized.  Since it is undisputed that the accused coating compositions utilize more than 60% solvent concentration, then Nextec's Motion for Summary Judgment must be denied on this further basis as well.

Finally, Nextec's Motion must be denied since it is not supported by evidence that is technically competent to establish its claim for patent infringement.  In light of the testimony of Nextec's own expert that a prior art technique referred to as "pressuring" could achieve penetration of the polymer composition as allegedly observed in the accused Brookwood products, and the absence of any sound technical basis for differentiating between the prior art technique and the claimed subject matter that is supported by proper testing (or on a similar basis recognized by experts in the field as valid), Nextec's Motion must be denied as a matter of law since it is not supported by competent technical evidence establishing the essential elements of Nextec's claim of infringement.

In light of the foregoing, the denial of Nextec's Motion for Summary Judgment of infringement and the grant of Brookwood's counterpart Motion for Summary Judgment of noninfringment is respectfully solicited.

Respectfully submitted,


ALSTON & BIRD LLP


By:_____
Thomas J. Parker
ALSTON & BIRD, LLP
90 Park Avenue
New York, NY 10016-1387
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

Blas P. Arroyo
Jitendra Malik
Bank of America Plaza
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Telephone:  (704) 444-1000
Facsimile:  (704) 444-1111

Attorneys for Defendant

BROOKWOOD COMPANIES, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of Brookwood's Memorandum In Opposition To Plaintiff's Motion For Partial Summary Judgment Of Infringement Of Selected Claims was served on the plaintiff electronically and by overnight courier, addressed to the following:

> Sean J. Kirby
> Sheppard, Mullin, Richter & Hampton LLP
> 30 Rockefeller Plaza, 24th Floor
> New York, NY 10112
> nextec@sheppardmullin.com

> Amar L. Thakur
> Jon E. Maki
> Michael Murphy
> Sheppard, Mullin, Richter & Hampton LLP
> 12275 El Camino Real, Suite 200
> San Diego, CA 92130
> nextec@sheppardmullin.com

This 14th day of August, 2009.

By Counsel