UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEXTEC APPLICATIONS, INC.,

                           Plaintiff,

        -against-

BROOKWOOD COMPANIES, INC.,

                           Defendant.

07 Civ. 06901 (RJH)

**MEMORANDUM OPINION
AND ORDER**

---

Richard J. Holwell, District Judge:

      Before the Court is defendant Brookwood Companies, Inc.'s ("Brookwood") renewed motion for summary judgment that a certain patent held by plaintiff Nextec Applications, Inc. ("Nextec") is invalid as anticipated by prior art.  Nextec concedes that the alleged prior art teaches every element of the patent at issue but argues that the patent is entitled to a filing date earlier than the filing date of the prior art.  Because issues of fact exist as to whether Patent No. 5,004,643 discloses the use of non-polymers in practicing that invention, summary judgment as to Patent No. 5,954,902's invalidity is inappropriate and Brookwood's motion is DENIED.

## I.  FACTUAL SETTING

**A.  Background**

      The Court presumes familiarity with the underlying facts of this case, and summarizes the facts relevant to this opinion as follows:[1]

---

[1] For a fuller statement of the relevant facts, the parties are directed to the Court's Memorandum Opinion and Order dated March 31, 2010.

1

Nextec manufactures various patented breathable water-resistant fabrics. Nextec holds several patents covering the fabrics it makes, the methods of making those fabrics, and the systems for making the fabrics. Nextec's fabrics are sold to garment manufacturers that use the fabrics to produce a variety of consumer and military goods, including windshirts, parkas, and tents. Nextec's fabrics are produced by taking them through a fabric coating operation. Broadly speaking, that operation consists of rollers that pull the fabric through a machine, somewhat similar to a movie projector threading a film through a reel. At one point in the process, there is a blade or knife that is positioned transverse to the fabric. A coating composition is deposited in front of the blade, and the blade is then used to apply the composition to result in treatment of the fabric. A series of parameters in this coating operation can be adjusted to achieve the desired fabric properties, including: the tension of the fabric, the speed of the fabric, the sharpness of the blade, the depth of the blade as it impacts the fabric, the makeup and rheology of the coating composition, and the weave of the fabric.

Nextec has filed several patent applications including Application Serial Number 167,630 (the "'630 application"), and is the assignee of several patents, including United States Patent Nos. 5,004,643 (the "'643 patent") and 5,954,902 (the "'902 patent").[2] The '630 application, filed on March 14, 1988, is titled "Saturation and Rheology-Controlled Impregnation of a Web." The application states that it "teaches a method of controlled saturation and impregnation of webs, typically fabrics, with viscous materials, typically polymers." U.S. Patent Application Serial No. 167,630 (filed Mar. 14, 1998). The '643

---

[2] The '643 patent is provided in Kirby Decl. Ex. 7. The '902 patent is provided in Kirby Decl. Ex. 1. The '630 application is provided in selections at Kirby Decl. Ex. 8.

patent, filed on March 10, 1989, is titled "Silicone Polymer-Internally Coated Webs."

The invention is summarized in the Abstract as follows:

> An improved process is provided for treating a porous web (especially fabric) to produce a novel silicone polymer internally coated web. In the process, a starting curable liquid silicone polymer is coated under pressure upon one surface of the web, and the web is then subjected to localized shear forces sufficient to move the silicone polymer composition into interior portions of the web and to distribute the silicone polymer composition generally uniformly therwithin [sic] in such planar region. Excess silicone polymer composition is wiped away from a web surface. Thereafter, the resulting web is heated or irradiated to cure the silicone polymer. Preferably a web is preliminarily impregnated with a fluorochemical. Webs procuded [sic] by this process are breathable, waterproof or highly water repellent, and flexible.

U.S. Patent No. 5,004,643, at [57] (filed Mar. 10, 1989). The '902 patent, filed on June 7, 1995, is titled "Controlling the Porosity and Permeation of a Web." The invention is summarized in the Abstract as follows:

> Products and methods for controlling the porosity and permeation of a web are provided using a curable thixotropic shear thinnable polymer composition that preferably encapsulates a plurality of fibers of the web and/or forms an internal layer within the web. Webs suitable for several different uses are featured, for example medical garments resistant to permeation by a virus or bacteria. The effective pore size of the web is controlled by regulating various factors such as the thickness of the polymer composition encapsulating the fibers and the thickness and placement of the internal polymer layer. Other factors include the polymer density, structure, and crosslinking orientation, as well as the diffusion, permeation, and sorption of the polymer.

U.S. Patnet. No. 5,954,902, at [57] (filed June 7, 1995). Though mentioning only polymeric compositions in its abstract, the '902 patent's specification is not limited to polymers. Instead, under the subheading "Curable Thixotropic Materials" the patent provides as follows: "In general, any curable, thixotropic material may be used to treat the webs of the present invention. Such materials are preferably polymers, more preferably silicone polymers." '902 Patent col. 6 ll. 40-43. The patent claims its earliest

3

filing date in the United States Patent and Trademark Office ("USPTO") from the '630 application, that being March 14, 1998.  That filing date is claimed through a chain of applications and patents that includes the '643 patent, filed on March 10, 1989.[3]

Brookwood is a competitor of Nextec in the sale of certain products that are at issue in this action.  Brookwood, through its affiliates, has been using coating equipment to coat textile fabrics for over forty years.  In 2006, Brookwood was approved to supply garments to the United States military that meet the specifications of the military's extreme cold weather garment clothing system, known as "Generation III" or "Gen III."  At that time, Nextec was already an approved supplier to the government under the Gen III program.  The present dispute arose not long after Brookwood began supplying coated fabrics to government sub-contractors as part of the Gen III program.  The Brookwood products at issue are known as the Agility Storm-Tec X-Treme and Eclipse Storm-Tec X-Treme products (collectively, the "Storm-Tec Products").  They were produced on a coating apparatus known as the "KK-1 coating apparatus" or the "KK-1 coater" at a Kenyon, Rhode Island facility operated by a Brookwood affiliate, Kenyon Industries.

B.  Procedural History

Nextec filed the present lawsuit in July 2007, accusing the Storm-Tec Products of infringing various Nextec patents.  On July 17, 2009, the parties filed cross-motions for summary judgment.  On March 31, 2010, the Court granted in part and denied in part those motions, including denying Brookwood's motion that the '902 patent was invalid on the grounds that it was anticipated by prior art.  As relevant here, the Court held that

---

[3] This chain of patents and applications, (the "priority chain"), also includes United States Patent Nos. 5,209,965; 5,418,051; 5,876, 792; 5,869,172; and 5,874,164.  '902 Patent col. 1 ll. 7-24.

an issue of fact existed as to whether the '630 Application adequately described the use of *non-polymeric* curable thixotropic shear thinnable materials for coating purposes. *Nextec Applications v. Brookwood Cos., Inc.*, 703 F. Supp. 2d 390, 434 (S.D.N.Y. 2010). Specifically, the Court found that the '630 application's language covering "a method of controlled saturation and impregnation of webs, typically fabrics, with *viscous materials, typically polymers*," U.S. Patent. Application Serial No. 167,630 (filed Mar. 14, 1988) (emphasis added), suggested that the use of "*any* curable, thixotropic material," '902 Patent col. 6 l. 40 (emphasis added), for coating was possible in practicing the '630 application's invention. *Nextec*, 703 F. Supp. 2d at 433-34.[4] The Court did not, however, consider whether *all* of the patents and applications in the priority chain to the '630 application, including the '643 patent, adequately described the use of non-polymers for coating. Shortly after the Court issued its March 2010 opinion, Brookwood moved for reconsideration of the Court's denial of summary judgment on the issue of the '902 patent's invalidity, identifying the apparent oversight. The Court denied reconsideration but granted Brookwood leave to file a renewed motion for summary judgment on the issue.

Brookwood now renews its motion for summary judgment that the '902 patent is invalid as anticipated by prior art. Brookwood contends that the '643 patent fails to adequately disclose the use of non-polymers. Brookwood then argues that the '902 patent cannot claim entitlement to the '630 application's filing date because the '643 patent's failure breaks the priority chain.

---

[4] The '630 application's language concerning "materials, typically polymers" suggested the use of non-polymers despite that no non-polymer was specifically identified as usable in the patent application. *Nextec*, 703 F. Supp. 2d at 433.

5

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is proper if the moving party shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In deciding whether there is a genuine issue of material fact as to an element essential to a party's case, the court must examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (internal quotation marks omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The moving party must demonstrate that no genuine issue exists as to any material fact. *Celotex* 477 U.S. at 323-25.  As to an issue on which the non-moving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325 (rejecting a construction of Rule 56(c) that would require the party moving for summary judgment to produce evidence affirmatively establishing the absence of a genuine issue of material fact with respect to an issue on which the nonmoving party bears the burden of proof).

If the moving party makes such a showing, the "non-movant may defeat summary judgment only by producing specific facts showing that there is a genuine issue of material fact for trial." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996); *Celotex*, 477 U.S. at 322-23.  In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory

6

statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256-57; *Gross v. Nat'l Broad. Co.*, 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002). Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial. *See H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991).

**B.  Entitlement to an Earlier Filing Date Under 35 U.S.C. § 120**

The law governing the present motion is straightforward. Section 102 of the United States Patent Act provides that a patent may be invalid as anticipated by prior art. Anticipation requires both (1) that each element of the claim at issue is disclosed, whether explicitly or implicitly, in a single prior art reference; and (2) that that prior art be published or otherwise publically available at least one year before the patent at issue. 35 U.S.C. § 102(b); *Zenith Elecs. Corp. v. PDI Commc'ns Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008). Section 120 of the Act, however, allows a patent or patent application to claim a filing date earlier than that on its face—in other words a date that might be earlier than that of some would-be prior art—thus defeating the second Section 102 requirement. Section 120 provides, in relevant part, that a patent application

> for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States . . . filed by an inventor or inventors named in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application.

35 U.S.C. § 120. Finally, Section 112 requires that a patent's specification "contain a written description of the invention, and of the manner and process of making and using

7

it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same." 35 U.S.C. § 112.

"In order to gain the benefit of the filing date of an earlier application under 35 U.S.C. § 120, *each application* in the chain leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112." *Zenon Envtl., Inc. v. United Stated Filter Corp.*, 506 F.3d 1370, 1378 (Fed. Cir. 2007) (emphasis added). In other words, each application or specification for each item between the patent in question and the application to which it claims a priority filing date "must contain an equivalent description of the claimed subject matter." *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997). The Federal Circuit, reaffirming earlier decisions, recently clarified the parties' burdens in this regard in *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316 (Fed. Cir. 2008). The court explained that once the alleged infringer—the party advancing the affirmative defense of invalidity—makes an argument as to why the patent in question is invalid, the patentee—the party opposing the defense—must present evidence that the patents and applications in the chain through which the patent in issue claims an earlier filing date "contain[] [] written description[s] that support[] all the limitations of . . . the claim being asserted." *Tech. Licensing*, 545 F.3d at 1327; *see also Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 870 (Fed. Cir. 2010) ("The challenger has the burden of going forward with invalidating prior art. The patentee then has the burden of going forward with evidence to the contrary, *i.e.,* the patentee must show that the prior art does not actually invalidate the patent or that it is not prior art because the asserted claim is entitled to the benefit of an earlier filing date."). The burden then shifts to the alleged infringer to prove, "by clear and convincing

evidence," that the patent at issue "is not entitled to the benefit of the earlier filing date." *Tech. Licensing*, 545 F.3d. at 1328.  The alleged infringer might do this by, for example, proving that a specification for a patent in the chain does not support the limitations of the patent at issue.  *See*, *e.g.*, *id.* at 1331-32.  The specification "need not describe the claimed subject matter in precisely the same terms as found in the claims at issue"; instead it "must describe the later claimed invention 'in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.'"  *Id*. at 1331 (quoting *Lockwood*, 107 F.3d at 1572).  Whether an earlier application or patent specification adequately describes a later claim is a question of fact.  *Id*. at 1332.

## C.  Whether the '643 Patent Specification Adequately Discloses that Non-Polymers Can Be Used To Treat Fabrics

Brookwood argues that the '902 patent is invalid as anticipated by the '643 patent. Nextec responds that the '902 patent's effective date is March 14, 1988—the filing date of the '630 application—and therefore that the '643 patent, which has a filing date of March 10, 1989, does not predate the '902 patent and cannot be prior art.  In arguing for invalidity, Brookwood contends that the '643 patent fails to adequately disclose that it can utilize "any" curable, thixotropic material, and is thus limited to the use of polymers. Consequently, the '643 patent is not part of any chain through which the '902 patent may be provided a priority filing date relating back to the filing of the '630 application. Because it is Brookwood's burden to prove that parts of the priority chain between the '902 patent and the '630 application fail regarding disclosure, and because Brookwood

9

has highlighted only the '643 patent, the Court does not consider the disclosures of any other items in the chain. Moreover, for the same reason the Court only looks to whether the '643 patent adequately discloses that non-polymeric compositions may be used for fabric coating purposes. Nextec argues that certain lines in columns 3, 11, and 24 of the '643 patent disclose the use of non-polymers. (Pl.'s Opp'n at 8.) It is therefore Brookwood's burden to prove that those passages do not disclose that use. Finally, Nextec concedes that each element of the '902 patent is taught by the '643 patent. (*Id.* at 3-4 ("[F]or purposes of this motion, Nextec does not contest that the specification of the '643 Patent teaches each and every element of Claim 1 of the '902 Patent.").) Thus the only issue in question is whether the '643 patent discloses the use of non-polymers in the passages pointed to by Nextec—only if Brookwood has proven that no genuine issue of material fact exists as to whether the '643 patent discloses the use of non-polymers for coating, and that the '643 patent does not disclose that use, will the '902 patent be unable to claim entitlement to the '630 application's filing date.

      The first passage highlighted by Nextec is in column 3, lines "45 & 69-60 [sic]" of the '643 patent. (*Id.* at 8.) Out of an abundance of caution, the Court reads the citation to include lines 45 and 49 through 68.[5] This passage, under the subheading "Background of the Invention," reads, in relevant part, " In the fabric finishing arts, curing is a process by which resins or plastics are set in or on textile materials, usually by heating. . . . Polymerization can refer to polymer formation or polymer growth." '643 Patent col. 3 ll. 50-52, 59-61. Then, under the subheading "Summary of the Invention," the passage reads, "This invention relates to a flexible porous web which contains an internal coating of a silicone polymer composition. The silicone polymer composition

---

[5] Line 68 is the bottom line in column 3.

has a viscosity that is sufficient to achieve an internal coating of the web." *Id*. col. 3 ll. 64-68.

Nextec's second passage is in column 11, lines 1 through 4 of the '643 patent. This passage, under the subheading "Description of the Preferred Embodiments," reads, "The curable silicone impregnant composition is believed to be typically polymeric, to be usually a mixture of co-curable polymers and oligomers,[6] and to include a catalyst to promote the cure." *Id*. col. 11 ll. 1-4. Nextec notes that "this is almost identical to the language found in the '630 application upon which the Court denied Brookwood's inintial motion for summary judgment." (Pl.'s Opp'n at 11.)[7]

The final item Nextec points to is a table contained in column 24, lines 1 through 26 of the '643 patent. The table, titled "Illustrative Starting Silicone Polymer Compositions," apparently lists "[s]ilicone resin compositions" which have "been used in the practice of this invention." '643 Patent col. 23 ll. 65-66. In its brief, Nextec describes the table as listing "pre-polymer components" which can "make a silicone resin." (Pl.'s Opp'n at 11.) Though unclear, Nextec appears to argue that the table teaches one with skill in fabric finishing that he or she could use pre-polymers, in addition to polymers, for coating fabrics; and that those pre-polymers only become polymers after being put in an oven for curing. (*Id.*)

Brookwood responds that the '643 patent evidence raised by Nextec does not disclose the use of non-polymeric compositions for coating purposes sufficiently for one

---

[6] While a polymer is a substance made up of a chain of many repeated units of a molecule, and oligomer is a substance made up of a chain of only a few repeated units. *See Abbott Laboratories v. TorPharm, Inc.*, 503 F.3d 1372, 1377 (Fed. Cir. 2007); Stedman's Medical Dictionary (27th ed. 2000), available at STEDMANS 281820, 325590 (Westlaw).

[7] That language being "The present U. S. Patent Application for SATURATION AND RHEOLOGY-CONTROLLED IMPREGNATION OF A WEB teaches a method of controlled saturation and impregnation of webs, typically fabrics, with viscous materials, typically polymers." '630 Application at 1.

11

with skill in the art to understand that non-polymers were usable to practice the '643 patent.  (*See* Def.'s Reply at 6-9.)  Considering the evidence in the light most favorable to Nextec, however, there remains a disputed issue of material fact as to whether the '643 patent discloses the use of non-polymers.  Column 11, lines 1-3 discloses the use of a "typically polymeric" curable silicone impregnant composition.  This evidence could support a conclusion that the composition is a typical polymer—that is that the composition is a common, or normal, polymer.  But it could also support a conclusion that the composition is typically a polymer—that is that the composition is usually, but not always, a polymer.  If the latter reading—one which the Court identified in its prior opinion as a plausible reading of "typically" in the '630 application—is correct, then the '643 patent might adequately disclose the use of non-polymers.  This is a question for trial, and summary judgment is inappropriate.  *See Nextec*, 703 F. Supp. 2d 434.

### III.  CONCLUSION

For the reasons stated above, defendant's renewed motion for summary judgment is DENIED.  The Clerk of the Court is directed to close this motion **[126]**.  The parties are directed to appear for a status conference on Friday, March 25, 2011, at 10:30 a.m.[8]

---

[8] Because the Court denies Brookwood's motion, the Court need not address Nextec's request for leave to amend its complaint.  Nevertheless, a single paragraph in a brief in opposition to an opponent's motion for summary judgment is not a proper forum for doing so.  A party may file a motion to amended pleadings; but as with any motion made by a counseled party, the party must follow the applicable procedures set forth in the Federal Rules of Civil Procedure and the Local Civil Rules of the Southern District of New York.  Any anticipated motion to amend may be discussed at the status conference scheduled for March 25, 2011.

SO ORDERED.

Dated: New York, New York
       March **6**, 2011

_____
Richard J. Holwell
United States District Judge