1c81nexc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   NEXTEC APPLICATIONS,

4               Plaintiff,

5        v.                          07-CV-06901

6   BROOKWOOD COMPANIES,

7               Defendant.          Telephone Conference

8   ------------------------------x
                                    New York, N.Y.
9                                   December 8, 2011
                                    2:03 p.m.
10
    Before:
11
                    HON. THEODORE H. KATZ,
12
                                    Magistrate Judge
13
                       APPEARANCES
14              (Present Via Telephone)

15  SHEPHARD MULLIN RICHTER & HAMPTON LLP
         Attorneys for Plaintiff
16  BY:  STEPHEN S. KORNICZKY, ESQ.
         DANIEL N. YANNUZZI, ESQ.
17       MICHAEL MURPHY, ESQ.

18  KING & SPALDING LLP
         Attorneys for Defendant
19  BY:  ETHAN HORWITZ, ESQ.
         JONATHAN DAVID BALL, ESQ.
20

21

22

23

24

25

1c81nexc

```
 1        (In chambers)

 2            THE COURT:  Hi, folks.  This is Judge Katz.

 3            ALL COUNSEL:  Hello, your Honor.

 4            THE COURT:  I have a reporter here, so who's going to

 5   be speaking for plaintiff?

 6            MR. KORNICZKY:  Steve Korniczky.

 7            THE COURT:  Okay.  And for the defendant?

 8            MR. HORWITZ:  Ethan Horwitz.

 9            THE COURT:  Okay.  Fine.  Just identify yourselves

10   when you speak so the reporter can get your name.

11            So I have your letters.  Tell me if there have been

12   any developments since you submitted them.

13            MR. KORNICZKY:  The only development, your Honor, is

14   we do have some of the information that we had requested.  We

15   do have a sample of the polymer, new polymer that is being used

16   by the defendant, but other than that, we don't have any new

17   developments.

18            THE COURT:  So tell me what you're still seeking and

19   what there's a disagreement about.

20            MR. HORWITZ:  Your Honor, one moment, because they

21   have three things.  They have the polymer --

22            THE COURT:  Yes.

23            MR. HORWITZ:  -- they have the fabric using the

24   polymer, and they have the documentation showing the process.

25            THE COURT:  Oh, okay.  Okay.  Now I know you were
```

1c81nexc

1    seeking a 30(b)(6) deposition, Mr. Korniczky?

2        MR. KORNICZKY:  Your Honor, there's a series of

3    documents that we've identified in the two letters that have

4    been circulated from plaintiffs.  The documents can be broken

5    down into three general categories.

6        THE COURT:  Yes.

7        MR. KORNICZKY:  One would be the development

8    documents.

9        THE COURT:  Right.

10       MR. KORNICZKY:  We have all of those documents.  The

11   second would be the commercialization documents.  We don't have

12   all of those documents.  And then the third would be a 30(b)(6)

13   deposition.

14       THE COURT:  Okay.  What are the commercialization

15   documents?

16       MR. KORNICZKY:  The types of things that we would need

17   would be the -- I just -- for your Honor's background

18   information, these are the documents that had been produced in

19   connection with the other polymers --

20       THE COURT:  Right.

21       MR. KORNICZKY:  -- that are at issue in these cases,

22   so they're no secret to anybody.

23       THE COURT:  Right.

24       MR. KORNICZKY:  So the commercialization documents

25   would be things like the run sheets that show the customers of

1    the fabrics made with the 52668 polymer composition.

2              THE COURT:  Right.

3              MR. KORNICZKY:  And these would be generated for each

4    lot that was sold.  It would also include purchase orders,

5    component cost lists, sales documents showing the cost of goods

6    sold, sales price and gross margins, e-mails within Brookwood

7    regarding fabrics made using this polymer composition.

8              THE COURT:  Right.

9              MR. KORNICZKY:  It would be e-mails with ABF (ph) and

10   the federal government regarding fabrics made using this

11   polymer composition, and it would include agreements related to

12   the sale and commercialization of fabrics made using the

13   polymer composition.

14             THE COURT:  Okay.  So Mr. Horwitz, what's your

15   position on those documents?

16             MR. HORWITZ:  Well, your Honor, I think we've got to

17   do first things first.  First thing they have to do is say that

18   they've analyzed the product, the polymer and the process, and

19   they have a good faith belief that we infringe.  I think that

20   we're putting the cart before the horse here.  So we've given

21   them enough to determine whether they want to accuse us of

22   infringement.  If we don't infringe, what are we producing and

23   why are we producing documents, why are we producing witnesses

24   and so on?  The first step is, let them say, yes, we infringe

25   this product, this is in the case, and then we can talk about

1  discovery.

2  THE COURT:  How does this fabric and process differ

3  from Brookwood's others?

4  MR. HORWITZ:  It is a -- what this case is all

5  about --

6  THE COURT:  I know what the case is about.

7  MR. HORWITZ:  Okay.  It's a different polymer and it

8  is a somewhat different process.

9  THE COURT:  Okay.  Okay.  So what's your reaction to

10  that, Mr. Korniczky?

11  MR. KORNICZKY:  Well, a couple of issues.  First off,

12  under the agreements that had been set forth in this case, this

13  information should have been produced irregardless, so it

14  should have been produced as supplementation to the existing

15  discovery in the case.  So any objection, as far as I'm

16  concerned, is just out of place, because we shouldn't even be

17  here right now.  We should have had all this information.

18  That's number one.

19  Number two, if the -- if the polymer does not

20  infringe, it's relevant to this case because they have a

21  defense, 1498 defense.  If it does infringe, it's relevant to

22  this case because it infringes.

23  THE COURT:  Right.

24  MR. KORNICZKY:  So no matter how you slice it, they've

25  got to produce this information.

1          THE COURT:  Well, the first option you mentioned, why

2     would the profits and costs matter if it didn't infringe?  I'm

3     not saying it might not be at all relevant, but you wouldn't be

4     seeking damages on it; correct?

5          MR. KORNICZKY:  Your Honor, one of the defenses is

6     that there's no other way to make -- one of the defenses would

7     be there's no other way to make this product --

8          THE COURT:  Right.

9          MR. KORNICZKY:  -- that doesn't infringe, but now

10     they're saying, well, guess what, we've got this new polymer

11     that allows us to make it and it doesn't infringe.  So we need

12     this information.

13          THE COURT:  I understand why that's relevant.  But why

14     is the sales data relevant if it's going to be the prior --

15          MR. KORNICZKY:  It would tell us what the costs are

16     going to be or what the expenses are or related to damages

17     generally.

18          THE COURT:  But would it be related to damages if you

19     concluded it wasn't infringing but it was relevant to their

20     defense?

21          MR. KORNICZKY:  It's relevant because the costs would

22     tell us why they might not have used it in the first place.

23     For example, it might go to willful infringement.  If this is

24     in fact a noninfringing way of practice, or making these

25     materials --

1    THE COURT:  Yes.

2    MR. KORNICZKY:  -- if they chose to use the other way

3  because it was less expensive and profits were greater, then it

4  would support our willful infringement case.

5    THE COURT:  Okay.  Let me ask you something.  When do

6  you anticipate having done the testing and drawn some

7  conclusions about whether you think it is infringing?

8    MR. KORNICZKY:  Well, there's a couple of things.

9  First of all, let's just take a step back and say, if we were

10  to go forward --

11    THE COURT:  Yes.

12    MR. KORNICZKY:  -- the way that defendant is

13  suggesting that we do and we determine that there is

14  infringement, then there's no way we're going to get the work

15  done that needs to be done by the trial.

16    THE COURT:  What's the trial date now?

17    MR. KORNICZKY:  March 5th, but we have a pretrial

18  hearing on February 24th.

19    THE COURT:  Okay.  Okay.

20    MR. KORNICZKY:  That said --

21    MR. HORWITZ:  Your Honor --

22    MR. KORNICZKY:  -- we have set aside --

23    MR. HORWITZ:  Your Honor --

24    THE COURT:  Let Mr. Korniczky finish.

25    MR. KORNICZKY:  Your Honor, there are two things.

1c81nexc

1    Okay.  First of all, to answer your question directly, we have

2    set aside the lab time on December 20th so we can run these

3    tests.

4            THE COURT:  Okay.

5            MR. KORNICZKY:  But that said, we've also worked

6    backwards from the pretrial date, trying to figure out, how do

7    we get all of this done.

8            THE COURT:  Right.

9            MR. KORNICZKY:  And we have -- we will, no matter

10   what, have to be working over the holidays, which we are

11   prepared to do.

12           THE COURT:  Okay.  Okay.

13           MR. KORNICZKY:  The time line is compressed, and at

14   the appropriate time during this hearing, I can propose what we

15   think needs to be done in order to get to pretrial without

16   changing any more dates.

17           THE COURT:  Okay.  Let's break things down a little

18   bit, Mr. Horwitz.  You're not objecting to a 30(b)(6) witness,

19   are you?

20           MR. HORWITZ:  Well, what I'm saying is, your Honor,

21   there's a preliminary step before we were -- before we think

22   about what discovery is necessary:  Does it infringe or doesn't

23   it infringe.  Now what shocks me is that Mr. Korniczky says

24   that he's got lab work done on December 20.

25           THE COURT:  Yes.

1c81nexc

1    MR. HORWITZ:  If he wants, I can give him the name of

2    a couple of labs that can do it tomorrow.  It is inconceivable

3    to me that he's got to wait to December 20 to first figure out

4    whether this infringes.  These are not complicated tests.

5    They're relatively easy.  They're done all the time by both

6    companies.  So I don't understand what's going on where --

7    THE COURT:  Well, you know, that's a 12-day issue so

8    it's not all that important.  Let's deal with what happens

9    after that.

10   MR. HORWITZ:  Well, what happens after that is, if

11   they accuse the product of infringing, then we can produce the

12   kinds of things that he talked about in terms of run schedules,

13   run sheets, and purchase orders and sales information.  I don't

14   know whether there is the cost information he's talking about,

15   but if we have that, we can easily produce it.

16   THE COURT:  How long would it take to do that?

17   MR. HORWITZ:  I think we can be ready within -- I

18   don't know -- two or three days.

19   THE COURT:  Okay.

20   MR. HORWITZ:  But, I mean, assuming -- assuming we get

21   some time now -- assuming we get it initially determined, we

22   can be working while he determines to gather the stuff, and

23   within a couple of days after he determines, be able to produce

24   it to him.

25   The other issue really -- there are two other issues.

1    One relates to the development documents.

2              THE COURT:  Yes.

3              MR. HORWITZ:  And there, I don't know what development

4    documents means.  We have been constantly developing and

5    developing and developing.  At some point we said:  This is an

6    interesting composition.  Let's do some experimentation on

7    this.  So if he's talking about this is the -- from the point

8    in time where we said, for the Level 5, this is an interesting

9    composition, let's develop this and let's develop the process

10   to use this, we can produce that fairly easily.  If he's

11   talking about going back and producing all of the documentation

12   on many other -- I mean, hundreds -- if I understand correctly

13   from the client, there may be hundreds of different experiments

14   done with close to a hundred different compositions, so that

15   you're talking about a tremendous amount of work, which has

16   really no relevance to this, but I don't want to -- I don't

17   want to produce just the stuff on 52886 and then be accused --

18   I'm sorry -- 52668 and then be accused that there's a problem.

19   So if you're talking about from the time we chose this for

20   Level 5 forward, I think we can gather that fairly

21   expeditiously.

22             So the last point relates to the e-mails and stuff.

23   Your Honor, the Federal Circuit has recognized that this kind

24   of issue is a problem.  And to that extent, one of the things

25   that they've done is they've put together a draft model order

1c81nexc

1    for e-discovery.  And that model discovery order in patent

2    cases is what we would like to follow, and basically what that

3    model discovery order says is, let them pick five people --

4    they've taken depositions, many depositions in the case.  They

5    know who our personnel is.  Let them take who they're

6    interested in.  Let's work out five keywords to search the

7    documents for, search the e-mails for, and let's go from there

8    in terms of producing them.  So if that's what they're talking

9    about, we can do that fairly expeditiously.  And the reason the

10   Federal Circuit has said that that's the way to do it is just

11   so that we don't have tremendous amounts of work done going

12   through hundreds of e-mails for no reason at all.

13          THE COURT:  So let's take this one step at a time.

14   Mr. Korniczky, if you stick with the December 20th lab time,

15   you're saying shortly thereafter you'll have determined whether

16   you're going to claim it's infringing?

17          MR. KORNICZKY:  That's correct, your Honor.  And just

18   to make a point there, we had made the same proposal for a

19   November 28th and -- I'm sorry -- November 16th, and the

20   information was not provided to us, so again, for defendant to

21   complain at this late hour, I don't think it's justified.  But

22   within -- my guess is a day or two, we should be able to know.

23          THE COURT:  Okay.  So --

24          MR. HORWITZ:  But your Honor, one other thing.

25          THE COURT:  Yes.

1       MR. KORNICZKY:  Again, looking forward to what has to

2  happen, we've got -- we have to get moving on the other issues

3  because if infringement is determined, and I feel quite

4  confident that that is where the discovery is going to come

5  out, we then will only have a couple of weeks to prepare for

6  fact depositions.  And then we'll have a week to do expert

7  reports.  So again, this work has to be moving forward

8  simultaneously.  These documents -- these documents are the

9  same types of documents we've been asking for and getting and

10  exchanging throughout the litigation.  Development documents, I

11  don't think there's any issue.  We recognize that they must be

12  working on all sorts of chemical compounds and whatnot.  We're

13  not talking about that.  We're talking about the one that they

14  have numbered 52668.  They keep records of when they first

15  sought to start working on that composition.  Counsel for

16  defendant said there was a point where they said, "This is an

17  interesting composition."  Okay.  So somewhere around that time

18  frame is where the relevant documents exist.

19       THE COURT:  Okay.  Okay.  I think, though, just to

20  keep things focused, in light of the short amount of time you

21  both have, it seems to me we ought to try to do this in the

22  most efficient way possible.  And efficient means not just time

23  but also what's really necessary.

24       So what I heard you saying, Mr. Horwitz, is that in

25  the interim your client can begin putting together these run

1    sheets, sales information, and purchase orders?

2            MR. HORWITZ:  Yes, your Honor.  We've already done a

3    preliminary look to see what's available.

4            THE COURT:  Okay.

5            MR. HORWITZ:  And we can be, you know, working on

6    gathering it together, you know, and be ready within, as I

7    said, within a day or two after they tell us -- within a

8    business day or two after they tell us --

9            THE COURT:  Okay.  I have no problem with that.  But

10    that should also include -- and I think Mr. Korniczky confirmed

11    what you wanted to know is, he wants the development documents

12    from the time forward when your client said, "This looks like a

13    product we might want to develop."

14            MR. HORWITZ:  Again, your Honor, this is -- there are

15    various different issues here.  This is -- this is from Level

16    5, what's called a Level 5.  And to get it from when we started

17    saying this is interesting for Level 5 forward, we will gather

18    those documents.

19            THE COURT:  Is that okay, Mr. Korniczky?

20            MR. KORNICZKY:  Your Honor, I'm not sure what

21    Mr. Horwitz is exactly suggesting.  I think that counsel on

22    both sides understand what documents are relevant and necessary

23    and what might lead to additional discovery.  We know -- we all

24    know what the rules are.  I'm concerned that if he's trying to

25    split hairs and there's some sort of -- I don't know what he's

1    getting at, because I don't think this is a complicated issue.

2           THE COURT:  Well, maybe you need to talk to him about

3    that a little further.  I mean --

4           MR. KORNICZKY:  I mean, he hasn't expressed a concern

5    to me that makes sense that would justify that this is a

6    difficult exercise to complete.  You know, the documents for

7    developing this compound, he knows what's related.  His client

8    knows what's related.  We know how they developed it.  Somebody

9    talked about this.  We know that this compound was being

10   prepared in order to make what we call the alleged infringing

11   products.  So again, I'm not sure what he's getting at or

12   trying to split hairs.

13          MR. HORWITZ:  Wait a minute.  We can produce all

14   documents relating to using this compound or this polymer in

15   what's being sold.  Period.  We can do that.

16          MR. KORNICZKY:  Now just to make sure, you said the

17   term "using these products."  We're talking about development

18   documents.  Are you splitting hairs again?

19          MR. HORWITZ:  Developing it for use in this product.

20   I mean, there are thousands of compounds we deal with and

21   experiment with all the time.  I'm not going back and looking

22   at what else could be done and so on and where this compound

23   may have been used ten years ago or things like that.  This is

24   an off-the-shelf compound.  I don't know and the client doesn't

25   know all the various times at which they may have considered it

1    for various products in history and so on.  When they started

2    considering it for this product, for this Level 5 product,

3    that's when they started experimenting with it for this product

4    and that's what -- the development documents that we can talk

5    about.

6              MR. KORNICZKY:  So what I heard for the first time,

7    your Honor, is that this is an off-the-shelf product that may

8    have been used ten years ago, but it sounds like the documents

9    that counsel wants to produce are only limited to those that

10   may have recently been produced.  I don't understand what he's

11   getting at.

12             MR. HORWITZ:  What I'm getting at is exactly this:

13   There came a point in time when we said, "Hey, this is an

14   interesting compound to use for this product."  From that point

15   in time going forward, we will produce the development

16   documents.

17             MR. KORNICZKY:  Obviously the compound was produced

18   before that because you're -- it sounds like you're saying,

19   "Hey, we've got this product, let's use it," but it became

20   interesting on this particular date so we're not going to give

21   him the information before it became interesting; we're only

22   going to give him the information after it became interesting.

23             MR. HORWITZ:  What I'm saying is that this is an

24   off-the-shelf product.  We do things with off-the-shelf

25   products all the time.  One of the things we've got to do is go

1c81nexc

1    back in time, I don't know how many years, to figure out, did

2    we experiment with it, didn't we experiment with it, and so on.

3    That is a monumental amount of work.  At some point in time

4    somebody said, "This compound is interesting for this product."

5    That is the point in time that matters.  And then we started

6    looking into whether it's appropriate for this product.  We

7    experimented with it; we perfected it, and so on.

8            THE COURT:  So when you say it's an off-the-shelf

9    product, does it mean it's not a product your client actually

10   developed?

11           MR. HORWITZ:  No.  It's an off-the-shelf product that

12   we added some thinner to it, but we buy it, you know, off the

13   shelf.

14           THE COURT:  Right.  Well, why don't we do this.  Let's

15   at least start with those documents and, I mean, it seems to

16   me, Mr. Korniczky, you'll get a 30(b)(6) deposition and you can

17   question them and, you know, try to nail this down a little

18   further.

19           MR. KORNICZKY:  Your Honor, I think that's probably

20   the way we're going to have to go, given counsel's comments.

21           THE COURT:  All right.

22           MR. HORWITZ:  Your Honor, one of the things I will do

23   is go back and verify that it is an off-the-shelf product that

24   we just thinned out.  I will make sure that that's correct and

25   that we did not develop the compound ourselves.

1c81nexc

1      THE COURT:  Okay.  Okay.  So Mr. Horwitz is saying

2   that within days of, say, December 23rd, when you probably

3   will know what you're doing with it, he can produce things, so

4   that's the week between, you know, Christmas and New Year's.

5      MR. KORNICZKY:  Your Honor, two things.  The first is,

6   the court's order was November 21st.  At a minimum, they

7   should have been collecting these documents.  30 days would be

8   December 20th.  I mean, I think these documents should be

9   produced by then.

10      THE COURT:  What order?

11      MR. KORNICZKY:  The court's order that said --

12   requiring all discovery to be reopened in this matter regarding

13   defendant's use of the 52668 polymer --

14      THE COURT:  Yes.

15      MR. KORNICZKY:  -- and referred the matter to your

16   Honor.

17      THE COURT:  Okay.  Did the judge set a date?

18      MR. KORNICZKY:  No, your Honor, but I guess I'm just

19   looking at it in terms of we knew what was at issue and the

20   parties had exchanged their requests.  So to me December 20th

21   would be, you know, an easy date for them to comply with.

22      THE COURT:  So Mr. Horwitz --

23      MR. HORWITZ:  But again, what he's doing is he's

24   saying, "I can take my time until December 20 to figure out

25   whether there's infringement," even though within two days, if

1c81nexc

1  they want to, they can figure it out right now, and go through

2  all this work, produce all these documents, gather all these

3  documents, in the hopes that there's going to be infringement

4  claims.  So again, I think your Honor had it absolutely

5  correct.  The first step is, is there a good -- do they have a

6  good faith basis to make a Rule 11 statement that this

7  infringes.  Once they say that, we can produce within a couple

8  of days.  That's the first step.  The second step is production

9  and we will do it -- instead of doing it, you know, between now

10  and December 20, we will do it within two business days.  So if

11  they tell us on the 23rd, we will have it produced on the

12  27th.

13       THE COURT:  So what next would there be,

14  Mr. Korniczky?

15       MR. KORNICZKY:  Okay.  First of all, your Honor, just

16  to remind everyone we're going to be working over the

17  holidays --

18       THE COURT:  Right.

19       MR. KORNICZKY:  -- and, you know, playing around with

20  just one or two dates is going to affect everything.  Could

21  I -- maybe the way to go is -- at this stage is to walk through

22  what we think would have to be done --

23       THE COURT:  Okay.  Go ahead.

24       MR. KORNICZKY:  -- if that's okay?  What I'm going to

25  do is -- what I did is, I worked back from February 24th, the

1c81nexc

1  pretrial.

2          THE COURT:  Yes.

3          MR. KORNICZKY:  Keep in mind, if we determine that

4  there is no infringement, this work falls by the wayside.  If

5  we do determine there's infringement, then there's work that

6  would have to be done.

7          THE COURT:  Okay.  Tell me what that is.

8          MR. KORNICZKY:  So what I started out with -- today is

9  December 8th.

10         THE COURT:  Right.

11         MR. KORNICZKY:  We had hoped to be able to get the

12  documents by December 15th.  Okay?  The reason for that would

13  be, we would then have about two weeks over the holidays to get

14  ready for fact depositions.  We would anticipate that the fact

15  depositions would take place between January 2nd and

16  January 13th.

17         THE COURT:  How many fact depositions do you think

18  there will be?

19         MR. HORWITZ:  What they said, Judge, was that they

20  need a half-a-day deposition of 30(b)(6) on two issues, the

21  development and the sales.  That's what they said to the

22  judge -- a half a day.

23         MR. KORNICZKY:  And your Honor, counsel for defendant

24  told the judge that's impossible, it will take at least a day,

25  and we agree with him.

1     MR. HORWITZ:  I didn't say that.  What I said was that

2  I knew that once the judge said you'll get some discovery, that

3  half day would expand, the way you're trying to expand it now.

4  What I also said was, two different witnesses, one for the

5  30(b)(6) on development and one for the 30(b)(6) on sales,

6  that's all I said.  And as I predicted, we've gone from half a

7  day to a huge amount of depositions.  That's what you said you

8  needed.  That's what you should stick to.

9     MR. KORNICZKY:  Okay.  Judge -- Judge Katz, I am

10  reading from Mr. Holwell's *[sic]* letter to the court, and he

11  said, "As Nextec is aware, these functions are separate and

12  require a number of different people to be deposed, which it

13  knows cannot be accomplished in a day, let alone half a day."

14  That was in his letter.  He is correct.  When we were looking

15  at, you know, what information that -- we're thinking just

16  specifically about this polymer in a very limited -- we

17  thought, yeah, maybe we could do it in half a day.  But in

18  reality it is a more complex issue than we had initially

19  presumed.  So what we're looking at is we would need --

20     THE COURT:  But these are 30(b)(6) witnesses.

21     MR. KORNICZKY:  That's correct, your Honor.

22     THE COURT:  Okay.  So let's even assume they're each a

23  day.

24     MR. HORWITZ:  Your Honor, wait a minute.

25     THE COURT:  I'm not saying they will be.  I'm just

1    trying to see what can be done.  So let's assume that I said to

2    you, okay, you can have a day with each of them.  Even though I

3    think with the sales 30(b)(6), we don't need a day.  What's the

4    remainder of the work you have to do?

5           MR. KORNICZKY:  The other -- your Honor, if there's

6    infringement, okay, then we would also -- what we hadn't

7    anticipated when we wrote the letter was the issue of willful

8    infringement.  And our theory would be that this stuff, this

9    information -- and again, I'm not trying to create an argument

10   in a hearing, but this information was suppressed, and we would

11   need to take a deposition of Amber Brookman, Ellis, Larry

12   Ellis, and Joanne Bagley.  These are the CEO, the R&D head, and

13   the head of the coating group.  These are the same folks that

14   we deposed with respect to the other -- the other compositions.

15          MR. HORWITZ:  Your Honor, I think this is going off

16   the deep end.  There is no possible way this can relate to

17   willfulness.  We didn't know about this.  We hadn't been able

18   to develop it.  As plaintiff is aware, we had a huge

19   development process.  They've been through every piece of the

20   development process.  This was not part of it.  Later on,

21   somebody figured out to use it.  It doesn't take the CEO of the

22   entire company, the CEO of this group and the CEO of that

23   group.  What they're trying to do is called harassment.  They

24   need two things -- they need two things if there is -- if they

25   say there is no infringement.  Number one is, they need the --

1c81nexc

1   what we've already given them.  They need the fabric, they need

2   the coating, and they need the process, and they need -- and

3   the second thing is, they need an expert witness saying it

4   doesn't infringe.  What's the difference how it was developed,

5   what's the difference how it was sold.  They know from the

6   documentation they've already gotten years ago that this was

7   not an option back at the time, it was not considered an option

8   back at the time that this was originally sold.  So how does it

9   possibly relate to anything other than harassment to take these

10   depositions is beyond me.

11          THE COURT:  Let me ask you something.  When there's a

12   30(b)(6) witness on development, is that witness also in a

13   position to talk about why or why not this product was used

14   with respect to the fabrics that are at issue?

15          MR. KORNICZKY:  Not necessarily, your Honor.  They

16   might.  But if you look at -- here's the situation and why

17   these witnesses were deposed with respect to the other

18   composition.  If you look at who makes the call, to keep in

19   mind -- if you look at who makes the call, it matters that we

20   take these depositions, because they were on notice of the

21   patents.  At the end of the day somebody had to make the call

22   that "we're going to use this particular composition," and it

23   could have -- the folks who would be involved in that decision

24   are Ms. Bagley, who's head of Kenyon, who handles the coating,

25   Larry Ellis, who's looking at the R&D, and Amber Brookman,

who's ultimately making the call.  These folks were deposed on

these issues with respect to the other -- the other

compositions.

        To give you an example, you know, Ms. Brookman's

salary depends upon the revenues she generates, okay, so how

she would determine whether or not to go forward with a

particular composition that does or does not infringe would be

totally relevant and directly relevant to willful infringement.

The questions that were asked of Mr. Ellis in terms of R&D,

does this infringe or not, did you compare it to the patent

claims, did you get an opinion, all of these things are what

the Federal Circuit says you have to look at when you're

determining willful infringement.

        Now on this point --

        MR. HORWITZ:  Your Honor, your Honor --

        MR. KORNICZKY:  On this point -- I want to make one

point.

        MR. HORWITZ:  Your Honor, I realize that he can keep

talking, but let's get a couple things straight.

        MR. KORNICZKY:  Listen --

        MR. HORWITZ:  You've gone from half a day in one

letter to you said you need a day in your second letter.  Now

you -- and you needed two issues when you went to Judge

Holwell.  Now you've got multiple depositions of multiple

people, of all the executives of the company, and I think that

1 │ what you're doing is called a combination of fishing expedition

2 │ and harassment.  There is no way that this was known at the

3 │ original time.  There's no way this relates to anything

4 │ involved in the case other than, does it infringe, if so, how

5 │ much if so, or doesn't it infringe, if so, then you've got what

6 │ you need to know already.

7 │         MR. KORNICZKY:  Let's take a step back.  On

8 │ April 1st, at a hearing --

9 │         MR. HORWITZ:  Your Honor, what we're doing here is,

10 │ it's called the old trick of the camel's nose in the tent.

11 │ First you tell the judge, "All we need is half a day of

12 │ depositions," then you say, "Well, maybe we need a day."  Now

13 │ we need how many depositions, five or six depositions here?

14 │         MR. KORNICZKY:  No.  We're just -- one 30(b)(6) and

15 │ then three facts.

16 │         On April 1st, your Honor, the judge --

17 │         MR. HORWITZ:  You know, I think that what we're doing

18 │ here is adding layer upon layer upon layer of depositions, of

19 │ document production, all designed to harass.  Your Honor,

20 │ Mr. Korniczky has been talking about the fact that

21 │ Ms. Brookman's salary is based upon sales.  And again, what

22 │ does that have to do with anything?  He is accusing her of all

23 │ sorts of things that he's not been able to prove in the prior

24 │ depositions, and all he's doing is trying to go over old ground

25 │ over and over again, trying to get a good sound bite that he

1    couldn't get in his original deposition.

2            THE COURT:  Well, I can hear you.  I heard you.  I can

3    only hear one of you at a time on these calls.

4            MR. HORWITZ:  Okay.  Your Honor, the second thing is

5    that with respect to the depositions of the 30(b)(6) of the

6    development and the process, your Honor, I just want to make

7    sure that we're not going to cover old ground, we're not going

8    to go back to things in the process that are the same as what

9    was done previously and go over those over and over again,

10   again, trying to get a sound bite.  This is a very limited

11   issue with a very limited sales, very limited change in the

12   process, and so on.  And I think what we're doing is -- what

13   Mr. Korniczky wants to do is he did not get good sound bites

14   when he took the depositions the first time, and he's trying to

15   do them all over again and redo the deposition -- the discovery

16   all over again to try and get what he couldn't get originally.

17           THE COURT:  Mr. Korniczky?

18           MR. KORNICZKY:  Yes.  One point, your Honor.  On

19   April 1st, we had a hearing before Judge Holwell, and he --

20   the specific question he asked was, "Is there anything else

21   that we need to discuss prior to trial?"  This was months

22   before trial -- this was months before trial.  Amber Brookman

23   was there, counsel for Brookwood was there, and nobody said,

24   "Hey, by the way, we forgot to tell you, we're using a new

25   product now."  Okay?

1c81nexc

1      Now we're in a position where, six months later,

2  they've sort of slightly mentioned the fact that we've got this

3  new product we're using, but they don't -- they have a new

4  product but they don't know if they're using it.  Then we find

5  out that they're using it.  So now we're in the situation that

6  we're in.  The information that I'm seeking is the same

7  information any patent owner would be seeking in connection

8  with any infringing product.  This is not rocket science in

9  terms of what we're trying to figure out.  Number one.

10     THE COURT:  But you can acknowledge, though, that you

11 didn't identify this discovery in your letter to Judge Holwell.

12     MR. KORNICZKY:  I did not.

13     THE COURT:  And, you know, so tell me what the

14 development 30(b)(6) deposition addresses.  How they came up

15 with the product and decided to use it for this?

16     MR. KORNICZKY:  Yes.  The development would be

17 development of the 52668 polymer --

18     THE COURT:  Yes.

19     MR. KORNICZKY:  -- use of the polymer to manufacture

20 the fabrics --

21     THE COURT:  Right.

22     MR. KORNICZKY:  -- the manufacturing process to make

23 the fabrics --

24     THE COURT:  Right.

25     MR. KORNICZKY:  -- communications regarding how it's

1    used, or its use, communications regarding the fabrics made

2    using the polymer, the testing conducted on the polymer, the

3    testing conducted on fabrics made using the polymer, the cost

4    of the components to make the polymer, the cost of the

5    components to make the fabrics, and then sales.

6            THE COURT:  Okay.  First of all, we're not even at the

7    stage of knowing whether you're going to accuse this product of

8    infringement.

9            MR. KORNICZKY:  That's correct.

10           THE COURT:  I'm prepared to, for now, authorize

11   30(b)(6) witnesses on development and sales.  You're not going

12   to take a whole day with a salesperson, are you?

13           MR. KORNICZKY:  I don't think so.  Your Honor, I can't

14   see why.

15           THE COURT:  Right.  And what about the development

16   person?

17           MR. KORNICZKY:  You know, I think total -- I think --

18   well, look, I'm afraid if I say this, then Mr. Horwitz is going

19   to say that I took a position that's set in stone.  I think we

20   can do the 30(b)(6) in a day --

21           THE COURT:  Right.

22           MR. KORNICZKY:  -- okay?  It depends on how many

23   witnesses there are.  But we're not looking, you know, to drag

24   out, you know, dozens of days of deposition.  I think we're

25   looking at about four days total.  So you have the 30(b)(6) and

1    the three witnesses.

2            THE COURT:  Well, let's say do you these 30(b)(6)s in

3    the first week of January.

4            MR. KORNICZKY:  Okay.

5            THE COURT:  So you were going to go through what else

6    has to be done.

7            MR. KORNICZKY:  Right.  So I'll tell you the schedule

8    that I had proposed, and then we can work from there, I guess.

9            So January 2nd to 13th we figured we could finish

10   all the fact depositions.  Maybe the suggestion here is,

11   depending upon what we find on the 20th, maybe your Honor

12   would -- we could approach your Honor regarding the

13   willfulness, because if there's no infringement, we obviously

14   don't need the willfulness.

15           THE COURT:  Right.

16           MR. KORNICZKY:  But then from the 13th through the

17   20th, I think we're looking at seven days to prepare or to

18   supplement the expert report on infringement.

19           THE COURT:  Right.

20           MR. KORNICZKY:  Then there would be seven days for

21   defendant to prepare their rebuttal on infringement.

22           THE COURT:  Right.

23           MR. KORNICZKY:  Then we would allow, from January 27

24   to February 6, to prepare for expert depositions, because

25   obviously we would take their deposition, the deposition of

1c81nexc

1    their expert and they would take ours.  We would allow –– I

2    think we have in there from February 6 to February 10th to

3    finish that.  That now leaves the parties two weeks to get

4    ready for pretrial.  This is all doable for both of our firms,

5    but you see how compressed it is.

6         MR. HORWITZ:  Your Honor, I think that from a timing

7    point of view, if we just –– if we had the 30(b)(6) depositions

8    the first week of January, it is very easy for them to get

9    their expert by the end of the second week, like

10   January 13th.  We would want to take the deposition of their

11   expert before our expert report was due so we fully understood

12   what the expert would have to say.  And so we would take the

13   deposition say on –– somewhere, the 19th or 20th, and then

14   our rebuttal report would be due the 27th as they –– as they

15   said would be due, and then our witness –– our expert could be

16   deposed the week after.

17        THE COURT:  Well, that's not, schedulewise, much

18   different than what we heard.  So what would be next?

19        MR. KORNICZKY:  The issue there, your Honor, with

20   respect to taking a deposition and then writing their expert

21   report is never how it's done.  That's not the way we've done

22   it in this case.  Obviously both sides exchange expert reports

23   and then both sides take their respective depositions.  That

24   would be our proposal.  But the point is, your Honor, that gets

25   us to the pretrial and that keeps the existing trial date.

1c81nexc

1          THE COURT:  All right.  But even assuming the schedule

2     that I'm sort of suggesting, I don't see why -- I know it's

3     going to be tight, but it seems like it's doable.

4          MR. KORNICZKY:  It is doable, your Honor, absolutely.

5          THE COURT:  So I think that it's fine.  It's okay

6     then.  I mean, it would be great if you can move up your lab

7     time, but if you can't, you would let them know by no later

8     than the 23rd whether you're going to take the position that

9     it's infringing, they would produce all their responsive

10    documents let's say by the 28th, let's say, or the 27th,

11    28th.  In the first week of January you would do the 30(b)(6)

12    depositions, assuming there's not going to be any others, but

13    I'll deal with that.  I don't think you need the others for the

14    expert reports.

15         MR. KORNICZKY:  That's correct, your Honor.  In fact,

16    to be frank, the willful infringement depositions, if they were

17    to go forward, wouldn't necessarily have to be done that early

18    week.  I think they would have to be done prior to the

19    pretrial.  So we have time to obviously designate what we would

20    need, so you're correct.

21         THE COURT:  So if you can do the 30(b)(6) depositions

22    the first week in January and your expert can issue a

23    supplement by the 13th --

24         MR. KORNICZKY:  I don't think we'll be able to get it

25    that quick.  We'll try.  I think what I had proposed was the

1c81nexc

1    20th.  Oh, wait a second.  I take it back.  If -- I think

2    what we had proposed is seven days.

3           THE COURT:  Right, right.

4           MR. KORNICZKY:  So yes, your Honor, you're correct, we

5    could do it, seven days after we complete the depo.

6           THE COURT:  Right.  So I think, you know, this all

7    fits within the schedule you anticipate.

8           MR. KORNICZKY:  And just to clarify, because counsel

9    for defendant had raised the issue of taking the deposition of

10   our expert before doing their rebuttal report, it is our

11   position that expert reports must be exchanged first before any

12   depositions are taken of the respective experts.

13          THE COURT:  Did you do that --

14          MR. HORWITZ:  What that does is basically say, we

15   don't understand your expert report properly so our expert

16   can't properly respond to it.  I think that there's -- most of

17   the cases I've been involved in, what's happened is, the expert

18   report is given, the deposition is taken so that the expert

19   report is understood, and then the responsive expert report is

20   given and the deposition of the responsive expert report is

21   taken.  So I think that all we're doing here is designing

22   something so that we can answer their expert report without

23   fully understanding it.

24          MR. KORNICZKY:  Your Honor, the way we've conducted

25   the expert depositions in this case is, expert reports are

1  exchanged and then the parties take the depositions.  The way

2  that Mr. Horwitz is suggesting, this doesn't make sense to me,

3  because now what you're doing is you're -- you have one report,

4  deposition, one report, deposition, then what?  Then we're

5  going to have another rebuttal?

6  THE COURT:  No.  I don't think it changes anything.  I

7  mean, it's standard practice.  It doesn't cause you any

8  prejudice.  You're going to get their report before you depose

9  their expert.  They're going to have your report before they

10  depose your expert.  I don't know why it has to wait until the

11  reports are both done.  You know, I'm okay with that.  And then

12  you're on track for your pretrial.

13  MR. HORWITZ:  Your Honor, could I just -- one

14  question?

15  THE COURT:  Yes.

16  MR. HORWITZ:  In order to produce the documents on the

17  28th, we would need for them to identify which five people

18  they want for us to pull the e-mails, and we would have to talk

19  with them about developing the five word searches that have to

20  be done on those e-mails, you know, pursuant to the Federal

21  Circuit's model system.

22  THE COURT:  Well, look, I would like you to have that

23  discussion in terms of the e-mail search.  I don't think you've

24  had it yet.

25  MR. KORNICZKY:  No.  We may need more than five terms.

1        THE COURT:  Right.

2        MR. HORWITZ:  Your Honor, that's exactly why the

3  Federal Circuit said you're limited to five terms absent

4  something unusual.

5        THE COURT:  Well, let's --

6        MR. HORWITZ:  If your Honor wishes, I can send you the

7  link to the Federal Circuit's statement there.

8        THE COURT:  Well, I'd like you to first have this

9  discussion.  Let's Mr. Korniczky and you see what terms you

10  think really are critical and let's see if they're within five

11  or how much above five they are.  I mean, I'm not going to be

12  overly rigid about this, but understanding that we want this

13  done efficiently and so that it can be done as quickly as

14  possible.  So it's not going to be a huge number of search

15  terms, there's not going to be huge numbers of individuals.

16  Okay?

17        MR. HORWITZ:  Your Honor, there's one last issue --

18  and I'm assuming that there's no dispute about this -- is that

19  all of this relates only to one of the patents given the fact

20  that the other patent has expired well before we started using

21  it.

22        THE COURT:  Is that the understanding, Mr. Korniczky?

23        MR. KORNICZKY:  Hang on.  Could you hold on one

24  second, your Honor.  Let me talk to my colleagues.

25        THE COURT:  Okay.

1    (Pause)

2         MR. KORNICZKY:  Your Honor, we'd have to see what the

3    testing results in --

4         MR. HORWITZ:  Your Honor, what's the difference, if

5    the patent expired?

6         MR. KORNICZKY:  Well, first, the difference, your

7    Honor, is that some of the claims call for thixotropic and the

8    other patents are not at issue.  So they may be relevant.  I

9    think we can resolve that issue once we've done our testing.

10         MR. HORWITZ:  Your Honor, there are two patents in the

11    case, and only two patents in the case.  One is expired and one

12    has not.  One expired well before we started using it.  What is

13    the problem here?

14         MR. KORNICZKY:  The problem, your Honor, is there's

15    four patents in the case, and Mr. Horwitz is well aware of

16    that, and he's well aware that the expert report covers all the

17    patents.  So if there's -- composition proves to be

18    thixotropic, then it might implicate the other two patents.

19         MR. HORWITZ:  Your Honor, we have already put together

20    a pretrial order.  We've already put together witnesses.  We've

21    already put together exhibits.  To include two patents for

22    which the parties are unprepared -- we've got a *Markman* hearing

23    on two -- on the two patents in the case.  I think it's -- this

24    is getting to be a little bit ridiculous.  I mean, why not

25    include patents that are not in the case?  I mean, what you're

1c81nexc

1    doing is you're saying, let's reopen the entire case back to

2    the beginning of time as to these two things which are -- you

3    basically have the tail wagging the dog.

4             MR. KORNICZKY:  We are not saying that.

5             THE COURT:  Well, why did the initial pretrial order

6    deal with only two patents?

7             MR. HORWITZ:  Because there are only two patents in

8    the case now.

9             THE COURT:  Well, my question is to Mr. Korniczky.

10   Where do these other two patents come from?

11            MR. KORNICZKY:  Your Honor, there were four patents in

12   the case.  The expert reports were done on four patents.  The

13   court construed a term, thixotropic.  Based upon the court's

14   claim construction, we withdrew, with respect to the products,

15   those patents based upon the court's claim construction.  But

16   if these -- this new composition proves to be thixotropic, then

17   of course those two other patents would potentially cover this

18   composition.

19            MR. HORWITZ:  Your Honor, I think we're getting into a

20   whole bunch of issues unrelated.  I mean, I think if Judge

21   Holwell wants to include additional patents in the case, that

22   is I think not a discovery issue.

23            THE COURT:  I agree.  I think at this point --

24            MR. HORWITZ:  What I just want to make sure of is,

25   when we take the depositions, we're not going to cover all of

1c81nexc

1    the old ground that was covered already in an attempt to try

2    and get better statements out of the witnesses on old issues.

3            MR. KORNICZKY:  Your Honor, if that's the case, that

4    this is what theoretically could have happened, once the claims

5    on the thixotropic issues were withdrawn with respect to the

6    other products, they now apparently slipped in a new

7    composition with a thixotropic composition, with meeting the

8    thixotropic limitation.  To suggest that those other two

9    patents are not in the case is -- it's just not the facts.  It

10   just turns out that the compositions that were at issue did not

11   meet the thixotropic limitations.  If this composition meets

12   the thixotropic limitation, then it's absolutely in the case.

13   It's in the complaint and it's in the expert reports.

14           MR. HORWITZ:  Your Honor -- your Honor, I don't think

15   we have to debate that now because whether those two patents

16   get put back in the case or not I think is up to Judge Holwell

17   in terms of how he wants to deal with it.  The only thing I

18   want to make sure of is that we're not covering all sorts of

19   old ground in depositions, trying to fix the old depositions as

20   opposed to getting new information.

21           THE COURT:  Well, I assume that these depositions are

22   going to be directed at this new product.

23           MR. KORNICZKY:  That's correct, your Honor.

24           THE COURT:  Right.  That's about all I can say on that

25   subject.

1          So does everybody have the dates down that you're

2     operating under?

3          MR. KORNICZKY:  Yes.

4          MR. HORWITZ:  Yes, your Honor.

5          THE COURT:  Okay.  And there will be a transcript of

6     this if you need it.  If any problems come up, just let me

7     know.

8          How much time is the judge giving you for trial?

9          MR. KORNICZKY:  I think we have two weeks, your Honor.

10         THE COURT:  Okay.

11         MR. KORNICZKY:  Your Honor, my associate just pointed

12     me to one more issue.

13         THE COURT:  Yes.

14         MR. KORNICZKY:  In our letter to the court -- I

15     presume this shouldn't be in dispute -- we had asked for a

16     plant tour.

17         THE COURT:  Mr. Horwitz?

18         MR. HORWITZ:  Your Honor, the plant tour is a

19     complicated thing.  If my understanding is correct, the place

20     shuts down for the Christmas holiday.  I have to check that.

21     They've had a plant tour.  It's the same machine they saw in

22     the last plant tour.  We're not using any different equipment.

23     It's all -- so what are we talking about here?  You've seen it.

24     The only reason to look at it again is because you want to fix

25     what you saw the first time.

1c81nexc

1       MR. KORNICZKY:  Your Honor, we have to confirm the

2   process is the same or different.  If they are using the same

3   machinery, great.  But, you know, the issue here -- the claims

4   cover a process.  And, you know -- so we want to, obviously --

5   obviously see what the process is.

6       MR. HORWITZ:  Your Honor, what they've been doing is,

7   they've got the plant tour.  They've taken pictures.  They know

8   exactly what the machine is.  One of the documents we gave them

9   is a document that shows exactly what the process is.  So in

10  other words, what do you do to the machine while this is going

11  through?  They have all of the information.  All this is is

12  just making additional work, creating additional problems and

13  so on.  I just don't see -- I don't see why they need it.  They

14  didn't ask for it to begin with.  This is an afterthought that

15  they're thinking of that is purely to make more work for us and

16  harass us.

17      THE COURT:  Mr. Korniczky, if you've seen the machine,

18  is it going to look any different?

19      MR. KORNICZKY:  Well, your Honor, if you read -- if

20  you read Mr. Horwitz' letter to the court, he says, one can --

21  I'm quoting now from his letter of November 4th on page 3.

22  "One cannot tell conclusively whether there's infringement by

23  looking only at fabrics; rather, it's necessary to observe the

24  coater."  Now, your Honor, each of these machines also has a

25  different setting, okay?  So all of this information, you know,

we don't want to be sandbagged at trial where they're saying,

oh, guess what, they never even looked at the machine.  So we

do need to look at it.  And it doesn't take a whole day.  It

takes a couple of hours.

THE COURT:  Where is the plant?

MR. KORNICZKY:  Rhode Island, your Honor.

THE COURT:  And who goes?  The expert goes or --

MR. KORNICZKY:  Yes, the expert and the attorneys.

THE COURT:  So even if the --

MR. HORWITZ:  All this is, is, if I tell you to

inspect a car and you can inspect it all that you want and then

I tell you the car is going 30 miles an hour and you say

there's infringement, and now you -- and now I tell you the car

is going 50 miles an hour, why do you need to inspect it again?

All I said was, in my letter, that they're going to try this

again, although they haven't asked for it, down the road

they're going to ask for more depositions, more documents,

they're going to ask for a plant tour, they're going to -- just

what I said.  Once they get their nose in the camel's -- the

camel's nose in the tent and they -- the judge gives them a

little bit, they're going to say, oh, but we need more and more

and more, and that's exactly what they're doing.

MR. KORNICZKY:  That wasn't the comment to the court,

and in addition, you know, representations in your expert

report have talked about what we saw, what was required to

1c81nexc

1  review on the plant tour, and, you know, again, we're not going

2  to be sandbagged.  Again, we need to see the equipment.

3          THE COURT:  So --

4          MR. HORWITZ:  But you saw the equipment.  It hasn't

5  changed.

6          MR. KORNICZKY:  With each of the products that has

7  been at issue in this case, your Honor, they've used the same

8  equipment, but they don't use it necessarily the same way.

9          MR. HORWITZ:  That's right, and that's why we gave you

10  the documents that show exactly how we use it.  It's a document

11  you asked for, and we gave it to you purely for that purpose,

12  so you understand exactly how the equipment is used.

13          THE COURT:  Well, listen, this is what I'd like you to

14  do.  I don't even know.  Your expert hasn't reviewed any of

15  this yet, has he, Mr. Korniczky?

16          MR. KORNICZKY:  She's received it.  I don't know the

17  extent to which she's --

18          THE COURT:  Right.  But she obviously doesn't have the

19  test results.

20          MR. KORNICZKY:  Correct.

21          THE COURT:  Let's find out what the claim is going to

22  be, and if you're going to claim infringement and if she thinks

23  it's critical, I'm not making them open the factory during the

24  holidays, but, you know, somebody can go there in the first

25  week in January.  Mr. Horwitz, you don't have to go.  You can

1c81nexc

1    send an associate, or nobody.  It's up to you.  But I'm not

2    going to rule it out.  Find out what the expert thinks is

3    necessary.

4            MR. KORNICZKY:  We will, your Honor.  Thank you.

5            THE COURT:  Anything else?

6            MR. KORNICZKY:  I think that covers it from

7    plaintiff's perspective, your Honor.

8            THE COURT:  Okay.

9            MR. HORWITZ:  I think we're fine, your Honor.

10           THE COURT:  Okay, folks.  Take care.

11           MR. HORWITZ:  Take care.  Thank you.

12           THE COURT:  You're welcome.  Bye.

13                          o0o

14

15

16

17

18

19

20

21

22

23

24

25